155 So. 590

### ABRAMSON et al. v. HARD, Comptroller, et al.

### 3 Div. 106.

Special Supreme Court of Alabama.
May 28, 1934.

Walter J. Knabe, Hill, Hill, Whiting, Thomas & Rives, and Rushton, Crenshaw & Rushton, all of Montgomery, for appellants.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for appellees.

CAFFEY, Special Justice, concurred in by MULKEY and MARTIN, Special Justices.

The bill of complaint in this case seeks an injunction to prevent the state comptroller from issuing, and the state treasurer from paying, any warrants out of an alleged balance of approximately $500,000 of general funds in the state treasury at the time the bill was filed on September 28, 1933, until the comptroller shall have issued warrants "sufficient to pay upon the Five Hundred Thousand Dollars ($500,000.00) special appropriation for public schools and upon the One Million Five Hundred Thousand Dollars ($1,500,-000.00) appropriation to the Alabama Special Educational Trust Fund for the year beginning October 1, 1932, such proportion of the said appropriations as the total sum of all appropriations bears to the total revenues available in said fiscal year" beginning Octo-

ber 1, 1932, and ending September 30, 1933. It also seeks a mandatory injunction to compel the state comptroller to issue, and the state treasurer to pay, upon the $2,000,000 appropriation for each of the fiscal years beginning October 1, 1933, and October 1, 1934, to the Special Educational Trust Fund, warrants drawn against the general fund in such proportion as the total sum of all appropriations made by the Legislature bears to the total estimated revenues for each of said fiscal years.

Based upon the language of section 19 of the Budget and Financial Control Act (Acts 1932 [Ex. Sess.] pp. 35, 44), together with article 23 of the Constitution adopted July 18, 1933 (see Acts 1933 [Ex. Sess.] p. 196), the appellants contend that in the event the state's revenue in any year is insufficient to pay appropriations made for that year in full then "*all* appropriations" of every kind and character are required by the express terms of this section to be prorated. The appellees, on the other hand, contend that all expenses of the legislative, executive, and judicial departments of the state government must be paid in full as preferred claims upon the state's revenues before there can be any proration, predicating their contention upon the requirement of the Constitution that such departments shall be maintained as the essential basis of our form of government. From the necessity that the essential departments of our government must be maintained, it is argued that all appropriations made for the carrying on of the work of each of these three great departments, through their various and sundry agencies, must be paid in full before any part of appropriations other than for the expenses of these departments can be paid.

■ In approaching the appellees' contentions, we do so with a consciousness that the necessary functions of the government must be performed, but also with a consciousness that full and exclusive power has been vested in the Legislature to determine the amount of appropriations necessary for the performance of the essential functions of government. Smith v. Speed, 50 Ala. 276, 282; State ex rel. Turner v. Henderson, Governor, 199 Ala. 244, 249, 74 So. 344, L. R. A. 1917F, 770; State Docks Commission et al. v. State ex rel. Jones, 227 Ala. 521, 150 So. 537; Const. § 72.

In such matters the power of the Legislature is "transcendent." Davis v. State, 68 Ala. 58, 44 Am. Rep. 128; State v. Alabama Fuel & Iron Co., 188 Ala. 487, 503, 66 So. 169, L. R. A. 1915A, 185, Ann. Cas. 1916E, 752; State ex rel. Gunter v. Thompson, 193 Ala.

561, 568, 69 So. 461; Finklea v. Farish, 160 Ala. 230, 235, 49 So. 366; State ex rel. City of Mobile v. Board of Revenue & Road Commissioners, 180 Ala. 489, 499, 61 So. 368.

In the exercise of that power the Legislature has made certain appropriations to various agencies of the three great state departments which are expressly declared to be "maximum, conditional and proportionate appropriations" to be prorated without discrimination in the event that the estimated budget resources are insufficient to pay all such appropriations in full. The Legislature has accordingly, within the exclusive power conferred on it, fixed maximum appropriations for these agencies of the government, but at the same time has declared these maximum appropriations "conditional" and in the event of a shortage of revenues for a given fiscal year has fixed such appropriations at a figure proportionate to the revenues received. In short, the Legislature has fixed a conditional maximum allowance, and in a certain contingency has provided for a reduction of this maximum. The Legislature being the sole judge of the amount necessary to support and carry on these governmental agencies and having determined that a pro rata of the maximum conditional appropriation is sufficient for that purpose, it is beyond the power of the judicial department to override this exercise of its judgment and discretion. Authorities, supra.

■■ We turn then to a consideration of the question of construction of the provisions of the Budget Act.

Section 19 of the Budget Act provides: "The appropriations made shall not be available for expenditure until allotted as provided for in Section 20, except as may be otherwise provided in this Act. All appropriations now or hereafter made except per-capita appropriations now in force or hereafter made to Eleemosynary and correctional institutions and the Alabama School for Deaf and Blind at Talladega * * * are hereby declared to be maximum, conditional and proportionate appropriations, the purpose being to make the appropriations payable in full in the amounts named only in the event that the estimated budget resources during each fiscal year of the quadrennium for which such appropriations are made, are sufficient to pay all of the appropriations in full; the Governor shall restrict allotments to prevent an overdraft or deficit in any fiscal year for which appropriations are made by prorating without discrimination against any department, institution, commission or other State

agency, the available revenues among the various departments, institutions, bureaus, boards, commissions and other State agencies. * * *"

It is, of course, a well-settled general rule of construction that where the language of a statute is plain and unambiguous, it should be given the meaning therein plainly expressed. Relying upon this rule, appellants contend that the use of the inclusive expression "all appropriations," in section 19 of the aforesaid act, expresses the plain and unambiguous intent on the part of the Legislature to require that all appropriations of every kind and character, other than those therein specifically excepted, shall be prorated in the event the revenues of a given year are not sufficient to pay all. But manifestly this is not true, for other provisions of the same act demonstrate that it was not intended as claimed that "*all* appropriations" of every kind shall be so prorated. Certain departments and agencies have appropriated to them all "*receipts*" from the administration and operation of the department or agency. For instance, there is appropriated to the convict department "all receipts from its administration and operation of the convicts" [Act No. 328, supra, p. 324, § 14 (2)]; to the state securities commission "all fees or monies paid or payable" (Ib., § 24½); to the highway department "so much of the gasoline taxes and motor vehicle licenses collected, as may be necessary" to pay the interest and sinking funds on outstanding highway bonds, and the rest and residue of such taxes and licenses and all other revenues coming in or accruing to the highway department for the maintenance and construction of roads and bridges (Ib., § 34); and to Confederate soldiers and sailors an amount "necessary to pay all the pensions allowed" out of the proceeds of the levy of the one mill tax for needy Confederate soldiers and sailors (Ib., § 36). These, and others of like character, manifestly are *appropriations* and as such are included in Act No. 328 and so would come within the broad term "all appropriations." It is clear, however, from the provisions of section 21 of the Budget Act that they are not appropriations intended to be prorated under section 19 or allotted under section 20.

Again, there are appropriations made pursuant to constitutional requirement which just as manifestly were not intended to be, and which in fact could not be, prorated, but the full amount of which, by express constitutional provision, must be appropriated by the Legislature to the purposes specified in the Constitution. Of this character are appropriations for the compensation of members of the Legislature (Const. § 49); the general school fund (Const. § 260; Turnipseed v. Blan, 226 Ala. 549, 148 So. 116); interest on funds of the University of Alabama covered into the treasury (Const. § 265); the compensation of registrars (Const. § 186); and (at least after October 1, 1935) the salaries of the judges of the Supreme and circuit courts (Const. § 150) and of the Governor and other executive officers (Const. § 118).

█ Other parts of the same act and other parts of our fundamental law, therefore, show that the language relied on cannot be given the broad meaning it might otherwise have, and cannot be held to mean that *all* appropriations of every kind and character shall be subject to allotment and proration; nor are we confined in arriving at the true meaning of the Legislature to the literal meaning of the words used.

" * * * 'The intention of the lawmaker constitutes the law. A thing may be within the letter of the statute and not within its meaning, or within its meaning though not within its letter.' * * *" Cocciola v. Wood-Dickerson Supply Co., 136 Ala. 532, 537, 33 So. 856, 857.

" * * * It will not do to be governed uniformly by the literal expression of a statute; for by so doing we should many times wander entirely from the obvious intention of the Legislature. * * *" Davis & Co. v. Thomas, 154 Ala. 279, 282, 45 So. 897, 898; Thompson v. State, 20 Ala. 54.

"A statute should be given effect according to its purpose manifested by its language and other rules of construction. The court is often not controlled by the literal language of the statute, but by its meaning when properly interpreted, though outside of such literal meaning. City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; Cocciola et al. v. Wood-Dickerson Supply Co., 136 Ala. 532, 537, 33 So. 856, 857; Davis & Co. v. Thomas, 154 Ala. 279, 45 So. 897; Graham v. City of Mobile, 17 Ala. App. 19, 81 So. 355; 59 Corpus Juris, 964 et seq." Nunez v. Borden, 226 Ala. 381, 147 So. 166, 167.

█ "In the interpretation and construction of statutes the primary rule is to ascertain and give effect to the intention of the legislature. As has frequently been stated in effect, the intention of the legislature constitutes the law." 25 R. C. L. p. 960.

In 25 R. C. L. p. 967, it is said: "It often happens that the true intention of the law-

making body, though obvious, is not expressed by the language employed in a statute when that language is given its literal meaning. In such cases, the carrying out of the legislative intention, which, as we have seen, is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed. Hence, the courts are not always confined to the literal meaning of a statute; the real purpose and intent of the legislature will prevail over the literal import of the words. * * *"

■ As regards the question when is a statute so ambiguous as to require construction, the following statement, taken from 25 R. C. L. 959, is quite pertinent to the present statute now under consideration: "Another occasion for construing a statute is where uncertainty as to its meaning arises not alone from ambiguity of the language employed, but from the fact that giving a literal interpretation of the words will lead to such unreasonable, unjust or absurd consequences as to compel a conviction that they could not have been intended by the legislature."

And again as stated at page 973: " * * * Frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular case. Hence, where the whole context and the circumstances surrounding adoption of an act show a legislative intention to make an exception to the general terms of the act, the exception will be recognized by the courts. * * *"

Again the same thought is expressed at page 1013 of the same text: "The language of a statute must be read in a sense which harmonizes with the subject matter and the general purpose and object of the statute. In ascertaining the intent of the legislature regard must be had to the subject matter of the statute as well as its language, and its operation must be limited to its subject matter and general purpose, in the absence of a specific expression of intent and purpose to extend its operation to other subjects. * * *"

In the case of State ex rel. Harris v. Bowden, 150 So. 259, 260, the Supreme Court of Florida has well stated the doctrine, to which we refer, as follows: " * * * It is the duty of the court to determine from a view of the whole law, or from other laws, in pari materia, the evident intention of the Legislature, and, when we do this, the construction may be different from the literal import of the terms employed, and, in such event, the evident intention must prevail over the literal import. In construing and applying a statute, the essential object to be effectuated is . to determine the valid legislative intent, and in reaching this determination we must consider the subject upon which the law operates, its language and purpose. (Citing cases.)"

The prime object of statutory construction "is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished." Alabama Pine Co. v. Merchants' & Farmers' Bank of Aliceville, 215 Ala. 66, 67, 109 So. 358, 359; Board of Education v. State, 222 Ala. 70, 74, 131 So. 239.

■ The court accordingly is entitled to look, in its effort to arrive at the intention of the Legislature, to other provisions of the same act, to consider its relation to other statutory and constitutional requirements, to view its history and the purposes sought to be accomplished thereby, and critically to examine the results that will flow from giving the language in question the meaning it might have if none of these things were considered.

In the case of the Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, page 115, 86 So. 8, 10, the court in discussing the constitutional limit of municipalities said: " * * * We may remark that Constitutions are interpreted by giving the words used their natural signification, and by regarding the order and grammatical arrangement in which they are placed; yet the interpretation is not alone abstractly considered by their words, 'but by their words read in the light of the conditions and necessities in which the provisions originated, and in view of the purposes sought to be attained and secured.' (Citing cases.)"

As to the history and purpose of the act, it is beyond question that it was enacted because of the fact that previous Legislatures had made appropriations in excess of the state's income which had resulted in the piling up of an enormous indebtedness, for which the state's warrants were outstanding. The state had no system of budgeting calculated to make it live within its income, and it was the general purpose of the Budget Act and of article 23 of the Constitution to provide a budget and to prevent the issuance of

the state's warrants when there were no available funds with which to pay them.

There are two primary purposes specifically expressed in the Budget Act: (1) To vest in the Governor of the state a direct and effective financial supervision over all agencies, departments, etc.; and (2) the institution and preparation of a balanced budget of all revenue and expenditures for each session of the Legislature.

The "effective financial supervision" could not have been intended to apply to any department where all charges were fixed by the Legislature, because no amount of supervision could change the result. For example, where the expenditures of the particular department or agency are in the nature of fixed salaries no power is given the Governor to change these salaries and no amount of supervision by him could reduce these expenditures. Similarly, to the extent that the expenses of any department or agency are definitely fixed by the Legislature no supervision by the Governor could be at all effective or was contemplated.

In like manner and for like reasons the Governor could not, by budgeting, change such fixed charges, and manifestly .it was not within the purposes of the act that he should be given any control over them. While a complete budget must, of course, take into consideration definite and fixed expenses as well as those that can only be estimated, the purpose of the Budget Act was to force the state to live within its income and to prevent the piling up of such a large deficit as existed at the time the act was passed. It was to reach and properly limit these uncertain expenses that a budget was needed and provided for.

This is manifest from the provisions of sections 13–18, inclusive, providing the machinery for arriving at the budget which is to be transmitted to the Legislature by the Governor. By section 13, captioned "Estimates of Appropriations," each department, institution, bureau, etc., is required to transmit to the state comptroller "estimates of their expenditure requirements for each fiscal year of the ensuing quadrennium," and if any department, etc., fails, the Governor is required "to submit such estimates."

Where a department has no expense except salaries, no estimate in its true sense could be submitted, nor would the fixed salaries, included in its requirements, be estimates in any sense. Only those expenditures not fixed and, therefore, subject to estimates, could properly be spoken of as estimates. While such departments might report their total estimated needs, only that part reported which did not constitute a fixed and certain charge is in reality an estimate. This part of the act is really intended to deal with those uncertain expenses that have to be estimated. Sections 15 and 16, respectively, provide for a tentative budget based both on estimated expenditures and estimated income, and a tentative hearing thereon. Section 17 provides for the formulation of a budget, after giving due weight to the estimates of expenditures and the estimates of income as well as the testimony elicited at the hearings provided for in section 16. But it is specifically provided by section 17 that the proposals contained in the budget shall represent the Governor's "judgment * * * in respect to * * * expenditure needs of the government of each of the fiscal years of the ensuing quadrennium." But this judgment manifestly is intended to relate only to those charges which have to be estimated and not to those perfectly definite because fixed by law.

Once a budget has been adopted, sections 19–28 provide for its "execution."

Section 19 provides that: "The appropriations made shall not be available for expenditure until *allotted* as provided for in Section 20 * * *." (Italics supplied.) Where the law itself fixes a definite amount that shall be paid for salaries or any other fixed charge, there is manifestly no field for the allotment provisions of section 20; whereas, where the expenditures are not definite and fixed in amount, an allotment may be proper. At one period of the year, the needs of a particular department for its running expenses not fixed by law may be more or less than at another period, and the Governor is given the discretion and power to allot less than one-fourth of the appropriations for such expenses if he decides that that much is not then needed.

Section 19 is accordingly dealing with appropriations as to which "allotment" has an appropriate and useful field of operation. This must be borne in mind when we come to consider the provision which immediately follows that, "All appropriations now or hereafter made * * * are hereby declared to be maximum, conditional and proportionate appropriations," the purpose being to make the appropriations to departments, bureaus, commissions, etc. (in so far as they are not definitely fixed by law, but are based on estimated needs), "payable in full in the

amounts named only in the event that the estimated budget resources during each fiscal year of the quadrennium * * * are sufficient to pay all of the appropriations." (Parentheses ours.)

To these estimated expenditures covered by the budget, the Governor "shall restrict allotments to prevent an overdraft or deficit in any fiscal year for which appropriations are made by prorating without discrimination against any department, * * * the available revenues among the various departments. * * *" The primary object of this provision is to prevent overdrafts, though it does provide that in allotting the Governor shall prorate. But as already pointed out, allotment has no field of operation where the charge is payable monthly and is definitely fixed by the law, and it seems clear that it was never contemplated that fixed salaries payable monthly and in amounts specifically provided by law needed allotment or were to be prorated to prevent the deficit. They were fixed and had to be paid, then, if necessary, the Governor was required to allot appropriations for all estimated expenditures appropriated to the various departments, etc., pro rata.

Section 20, in like manner, provides that before an appropriation for administration, operation, and maintenance of any department, etc., shall become available, there shall be submitted to the Governor 20 days before the beginning of each quarter "a requisition for an allotment of the amount estimated to be necessary to carry on its work during the ensuing quarter. * * *" (Italics supplied.) No estimate for salaries is necessary, as they are definitely fixed by law and appropriations to officers and employees are not appropriations for the "administration, operation and maintenance" of any department, institution, bureau, or agency within the meaning of this section, nor could "a requisition for allotment of an amount estimated to be necessary to carry on its [any department's, institution's or agency's] work" have any field for operation so far as fixed salaries are concerned.

This section further provides that the Governor shall first "approve such allotments." His approval or disapproval of such fixed charges as salaries certainly could have no effect and as certainly was not intended. Again, it was contemplated that he should approve only such expenditures as were not fixed and certain, and that he should prorate only those expenditures that were uncertain, that is, based on estimates of needs.

■ As applied to salaries of public officers and employees, the intent that the prorating and allotment sections of the Budget Act should not apply to reduce the salaries fixed by the Legislature is, we think, entirely clear. The specific question of how much such salaries should be reduced was considered in the Bonner Act (Acts 1932 [Ex. Sess.] p. 300 et seq.), and this specific subject was again considered and acted upon by the Legislature in the Lapsley-Lusk bill (No. 138, Acts 1933 [Ex. Sess.] p. 124). By the latter act it is provided in the clearest terms: "That the annual salaries of the officers and employees of the State of Alabama hereinafter named *shall be the amounts* hereinafter set opposite the respective offices, positions and employments, and shall be payable (to such officers or employees) in equal monthly installments." (Parentheses and italics supplied.)

That "the amounts" so fixed and required to be paid were not intended to be further reduced by the provisions of the Budget Act is, we think, clear from the history and purposes of these acts.

It will be noted that no general appropriation act was adopted after the passage of the salary act No. 138 referred to.

Under prior rulings of the court no appropriation act was necessary, the Legislature having fixed the amounts of the salaries in Act No. 138 and provided the method of payment. In the case of Nichols v. Comptroller, 4 Stew. & P. 154, page 157, the court laid down this rule, saying: " * * * It is conceded that no money can be drawn from the treasury, but in pursuance of an appropriation made by law, but it is not necessary, that there should be an act passed annually, for the appropriation: if there is a general law, fixing the salary, requiring it to be paid at the treasury, annually or quarter annually, this is sufficient."

This was followed in Riggs v. Brewer, 64 Ala. 282. The salary of the marshal was fixed by the Code of 1876 (section 586) at $2,000 annually. The court said: " * * * The salary being thus fixed by a general statute, permanent in its nature, no special appropriation by the General Assembly was necessary, to entitle him to demand payment of it, nor to authorize the auditor to draw a warrant on the treasurer for its payment. The statute, of itself, operated as an appropriation, and satisfied the constitutional requirement that money shall be drawn from the treasury only upon appropriations made by law. * * *" Page 284 of 64 Ala.

10

In the case of State ex rel. State Tax Commission v. Smith, Auditor, 188 Ala. 432, 66 So. 61, the court considered sections 2216 and 2218 of the Code of 1907, fixing the salaries of the members of the tax commission and the secretary and providing for the payment of such salaries in the same manner as salaries of other state officers are paid. The court observed that the inclusion of these salaries in the appropriation bill was unnecessary to provide for their payment.

Every Constitution since the admission of Alabama to the Union has provided that judges of the Supreme and circuit courts shall, at stated times, receive for their services a compensation which shall not be diminished during their continuance in office.[1]

Prior to the Constitution of 1875 there was no provision relating to the compensation of other than judicial officers, thus leaving executive salaries (and legislative compensation for the following term [2]) subject wholly to the judgment of the Legislature. In the Constitution of 1875 a provision is contained that the compensation of the Governor and other executive officers shall not be diminished or increased during their official terms.[3] A like provision is contained in section 113 of the present Constitution, in which we find also section 281, providing: "The salary, fees, or compensation of any officer holding any civil office of profit under this state or any county or municipality thereof, shall not be increased or diminished during the term for which he shall have been elected or appointed."

■ The appellants contend that article 23 of the Constitution permits the Legislature, indirectly or by implication, to compel a proration of all appropriations (with certain exceptions not necessary to be noticed and set out in section 19 of the Budget Act), and thus reduce to the figures resulting from such proration the salaries of all constitutional and statutory officials.

In the face of the express provisions relating to the judiciary and the executive we are unable to agree with this contention. The compensation of judges had been protected since the Declaration of Independence, that instrument setting out as one of the usurpations charged against the King the fact that, "He had made judges dependant on his will alone, for the tenure of their offices and the

amount and payment of their salaries." A like protecting provision in the Constitution of the United States has only recently been declared by the Supreme Court of the United States to place judicial compensation beyond the reach of Congress which undertook to reduce the same. Daniel W. O'Donoghue v. United States, 289 U. S. 516, 53 S. Ct. 740, 77 L. Ed. 1356. To a like effect see Evans v. Gore, 253 U. S. 245, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519.

In State, ex rel. State Tax Commission v. Smith, Auditor, supra, involving the question whether a lump-sum appropriation for the conduct of the tax commission should be drawn on for the salaries of the members of the commission and the secretary which had been fixed by separate act, the court said: " * * * Salaries are paid to public officials not so much as an equivalent for services performed as for the purpose of enabling them, while in office and in the performance of public duties, to be relieved of the necessity of constant watchfulness for the necessities and comforts of life. * * " Pages 439, 440 of 188 Ala., 66 So. 61, 63. Like provisions protect the salaries of all other constitutional and statutory officers (Const. §§ 118, 287). It is not possible to believe that absolute appropriations for fixed salaries (protected at least after October 1, 1935, by constitutional provisions from being reduced during the term of office) are converted by the Budget Act into conditional appropriations, subject to reduction in unknown amounts, in the event the money in the state treasury is insufficient to pay all appropriations made by the Legislature in full. We are thoroughly in accord, therefore, with what Special Chief Justice STRINGFELLOW has said on this subject.

In the opinion of Special Chief Justice STRINGFELLOW it is said that: "While the words 'all appropriations' might include all appropriations made by the Legislature, it is manifest from the provisions of sections 19 and 20 of the Budget Act that they were not intended to have such a broad meaning, but that their meaning was restricted to appropriations required to be allotted by the Governor, and, therefore, that only such appropriations are required to be prorated. It is further manifest from such sections that the only appropriations required to be allotted are appropriations for the administration, operation and maintenance of any depart-

---

[1] Constitution 1819 (art. 5, § 11); Constitution 1861 (art. 5, § 10); Constitutions 1865, 1868, and 1875 (art. 6, § 10); Constitution 1901 (§ 150).

[2] Constitutions 1819 and 1861 (art. 3, § 24); Constitution 1865 (art. 4, § 22); Constitution 1868 (art. 4, § 18).

[3] Article 5, § 7.

ment, institution, bureau, board, commission or other state agency upon quarter requisitions for the amount estimated to be necessary to carry on its work during the succeeding quarter. All other appropriations are therefore available without any allotment, and so far as the provisions of the act are concerned, may be paid in full."

With this statement we agree, but we feel that it might be well to point out, at least in a general way, the classes of appropriations to which, in our opinion, the Budget Act, in so far as it requires proration, has no application.

To fixed salaries and to other fixed expenses, such as the per diem allowed to officers for traveling expenses (Acts 1933 [Ex. Sess.] pp. 81, 114), both of which are appropriations to the officers to whom they are due rather than to any department, institution, bureau, board, commission, or other state agency, the proration provisions of this act have no application for the reasons already indicated.

There are, however, some of the necessary expenses of government which in their nature cannot be definitely determined with exactness in advance, as to which the Legislature has evidenced its intent, in our opinion, that they shall be paid in full, and to that end has set apart out of the general funds an amount which is to be used in so far as it is needed to pay these expenses in full. Appropriations for the payment of such governmental expenses do not differ essentially from fixed salaries or other fixed expenses. They are to be paid in full, so far as needed for payment of the specific governmental expenses for which they have been appropriated. Such expenses as the expense for fuel, light, and water, for postage, post office box rent, for repairing and insuring state property, for public printing, for telephone and telegraph service, for publishing the Governor's proclamation, for premiums on official bonds, for distributing public documents, for feeding prisoners, for arrest of absconding felons, for removal of prisoners, and others that might be mentioned are of this character, and it seems clear that the appropriations made for such specific purposes were intended by the Legislature to be paid in full and the appropriations to their full extent here set apart and were intended to be used so far as needed to pay them in full. On similar principles those appropriations setting apart specific amounts to take care of interest on the public debt and to provide for contingencies and emergencies were intended to set apart the specific amount fixed therein to be used for the purposes specified in so far as they are needed.

No appropriation of this character is, in our opinion, an appropriation to any department, institution, bureau, board, commission, or state agency "for the administration, operation or maintenance" thereof within the meaning of the Budget Act so as to be subject to allotment and proration.

■ It follows from what we have said above that the educational appropriations involved in this suit are entitled to a pro rata payment with the appropriations to all other departments, institutions, bureaus, boards, commissions, and state agencies other than appropriations that are definitely fixed in amount or are appropriated for the specific purpose of paying in full some governmental expense of the character hereinabove indicated, without any discrimination between them, and that the failure to pay such educational appropriations its pro rata share, according to the provisions of the act, would be a violation of the provisions of the Budget Act which requires that such appropriations should not be reduced, except proportionately, as therein stated, and a violation of the provision of the act that such appropriations should not be paid in full, unless the estimated budget resources were sufficient to pay all of the appropriations in full.

It does not follow, however, that the lower court erred in sustaining demurrers to the bill of complaint. This bill was filed within three days of the end of the fiscal year beginning October 1, 1932, and ending September 30, 1933, and sought first to enjoin the state comptroller from "drawing or issuing warrants upon the balance of the general funds in the treasury of the State of Alabama for the present fiscal year *until he shall have drawn and issued warrants against said balance of said general fund,* which warrants shall be *sufficient to pay upon the Five Hundred Thousand Dollars ($500,000.00) special appropriations for public schools and upon the One Million Five Hundred Thousand Dollars ($1,500,000.00) appropriation to the Alabama Special Educational Trust Fund for the year beginning October 1, 1932, such proportion of the said appropriations as the total sum of all appropriations* (including fixed salaries, fixed expenses and other appropriations which we have concluded should be paid in full) *bear to the total revenues available in said fiscal year."* (Parentheses ours.)

The bill in this aspect obviously did not make a case, as it sought a proration of ap-

propriations which were not subject to proration, and sought to enjoin the comptroller from drawing or issuing *any* warrants upon the balance of the general funds on hand whether for fixed salaries, fixed expenses, or for other appropriations intended for the payment of specific obligations. This aspect of the bill does not differ in principle from the relief sought and held properly denied in Hall v. Blan, 227 Ala. 64, 72, 148 So. 601. So far as the allegations of the bill of complaint go, the injunction prayed would have operated to prevent the proper disbursement of the entire balance in the treasury until complainant had first issued a warrant or warrants to pay the pro rata of the two educational funds in question.

 The bill next sought a mandatory injunction enjoining and commanding the state comptroller to issue upon the $2,000,-000 appropriation made for each of the years beginning October 1, 1933, and October 1, 1934, to the Alabama Special Educational Trust Fund warrants drawn against the general fund in the hands of the state treasurer in such proportion as the total sum of all the appropriations bears to the total revenues estimated by the Governor as available in each of said fiscal years and enjoining and commanding the state treasurer to pay such warrants for the pro rata or proportionate amount of such appropriations. Obviously, the issuance of warrants as prayed under this phase of the bill would not be in accordance with law, but directly contrary to it.

The act in question specifically requires that a requisition be made for an allotment each quarter before such an appropriation is available. The bill seeks to have a warrant presently issued for a pro rata or proportionate amount based on the total estimated revenues for each of the fiscal years in question. The law contemplates, as stated, a requisition and an allotment for each quarter of the year. Besides, this relief is predicated on the theory that all appropriations, including fixed salaries, etc., must be prorated, and for this additional reason issuance of warrants as prayed would be in violation of the law. The only theory upon which an injunction against such a state officer can be maintained is that he is disbursing funds contrary to law. Certainly, no injunction should issue to compel him to draw warrants which are not in accordance with the law, but are contrary to law.

 But it was insisted on oral argument that relief might be had under the general prayer. We are of the opinion that the allegations of the bill are not sufficiently definite and certain to justify the issuance of an injunction against the comptroller and treasurer on the theory that they were threatening to make further payments contrary to law. To support an injunction against a state officer on such a theory, the allegations should be so clear and specific as to leave no doubt of the threatened violation of law; and in our opinion, the bill under consideration does not measure up to this requirement so as to justify any relief under the general prayer. We accordingly concur in the affirmance of the decree of the lower court sustaining demurrers to the bill of complaint.

Affirmed.

STRINGFELLOW, Special Chief Justice.

The bill in this case was filed September 28, 1933, against J. H. Hard, Jr., as state comptroller, and S. H. Blan, as state treasurer, to require proportionate payment under the provisions of the Budget and Financial Control Act, of the $500,000 appropriation for the public schools, and the sum of $1,500,000 appropriated to the Alabama Educational Trust Fund for the fiscal year beginning October 1, 1932, and the sum of $2,000,000 appropriated for such fund for each of the years beginning October 1, 1933, and October 1, 1934; appropriated by the act of the Legislature of Alabama approved November 9, 1932 (Acts 1932 [Ex. Sess.] p. 321).

The bill avers that no payment has been made upon either of said appropriations, but that a large number of other appropriations made by the General Appropriation Act approved November 9, 1932, have been and are being paid in full, including all of the appropriations for the expenses of the legislative and judicial departments of the state, and a large number of the expenses of the executive department.

The equity of the bill, and the right of appellants to the relief prayed, depend upon the intention of the Budget and Financial Control Act (Acts 1932 [Ex. Sess.] p. 35), as the appropriations of the act approved November 9, 1932, are made subject thereto.

Section 19 of the Budget Act provides: "The appropriations made shall not be available for expenditure until allotted as provided for in Section 20, except as may be otherwise provided in this Act. All appropriations now or hereafter made except per-capita appropriations now in force or hereafter made to Eleemosynary and correctional institutions and the Alabama School for Deaf and Blind

at Talladega, Alabama, which appropriations shall remain in full force and effect and payable and disbursed as now provided by law are hereby declared to be maximum, conditional and proportionate appropriations, the purpose being to make the appropriations payable in full in the amounts named only in the event that the estimated budget resources during each fiscal year of the quadrennium for which such appropriations are made, are sufficient to pay all of the appropriations in full; the Governor shall restrict allotments to prevent an overdraft or deficit in any fiscal year for which appropriations are made by prorating without discrimination against any department, institution, commission or other State agency, the available revenues among the various departments, institutions, bureaus, boards, commissions and other State agencies." Acts Extra Session 1932, p. 35 [44], § 19.

Section 20 of the Budget and Financial Control Act provides that: "Before an appropriation for administration, operation and maintenance of any department, institution, bureau, board, commission or other State agency shall become available, there shall be submitted to the Governor, not less than twenty days before the beginning of each quarter of each fiscal year, a requisition for an allotment of the amount estimated to be necessary to carry on its work during the ensuing quarter." Section 20 further provides that: "The Governor shall approve such allotments, or modifications thereof, as he may deem necessary," and that allotments thus made can be changed by the Governor upon his own initiative.

While the words "all appropriations" might include all appropriations made by the Legislature, it is manifest from the provisions of sections 19 and 20 of the Budget Act that they were not intended to have such a broad meaning, but that their meaning was restricted to appropriations required to be allotted by the Governor, and, therefore, that only such appropriations are required to be prorated. It is further manifest from such sections that the only appropriations required to be allotted are appropriations for the administration, operation, and maintenance of any department, institution, bureau, board, commission, or other state agency upon quarter requisitions for the amount estimated to be necessary to carry on its work during the succeeding quarter. All other appropriations are therefore available without any allotment, and so far as the provisions of the act are concerned, may be paid in full.

It is impossible to believe that it was intended that the quarterly requisitions and the other allotment provisions of the Budget Act must be complied with before appropriations for fixed salaries of state officers can become available. They are wholly inapplicable to such appropriations. That such allotment provisions were not intended to be applied to such salaries is shown by the act of the Legislature approved April 14, 1933 (Acts 1933 [Ex. Sess.] p. 124), containing only appropriations for the fixed salaries of state officers and employees, etc., without any reference to the Budget and Financial Control Act. The fact that the act approved November 9, 1932 (Acts 1932 [Ex. Sess.] p. 321), containing appropriations for the fixed salaries of state officers and also appropriations for different departments or agencies of the state government, contained a provision subjecting the appropriations to the terms and conditions of the Financial Control Act, while such provision is omitted from the act of 1933 containing appropriations for salaries, only authorizes the conclusion that the omission was because the salaries of the state officers were not intended to be subject to allotment or proration. This conclusion is confirmed and allotment and prorating of salaries negatived by the provision of the act of 1933 (Acts 1933 [Ex. Sess.] page 124), that "The annual salaries of the officers and employees of the State of Alabama hereinafter named shall be the amounts hereinafter set opposite the respective offices, positions and employments, and shall be payable in equal monthly installments." And the Code of Alabama provides that they shall be paid on the last day of each month. The entire annual salary is to be paid in equal monthly installments on the last day of each month and not at such times and in such amounts as the Governor may approve to be necessary.

The purpose of the amendment to the Constitution designated as article 23 (see Acts 1933 [Ex. Sess.] p. 196) was to prevent another deficit in the state treasury. This it intends shall be done by prohibiting the issue of warrants by the state comptroller upon the state treasurer, "unless there is in the hands of such Treasurer money appropriated and available for the full payment of the same"; and by providing that: "In case there is, at the end of any fiscal year, insufficient money in the State Treasury for the payment of all proper claims presented to the State Comptroller for the issuance of warrants, the Comptroller shall issue warrants for that proportion of each such claim which the money

available for the payment of all of said claims bears to the whole, and such warrants for such prorated sums shall thereupon be paid by the State Treasurer. At the end of each fiscal year all unpaid appropriations which exceed the amount of money in the State Treasury subject to the payment of the same after the proration above provided for, shall thereupon become null and void to the extent of such excess." See Acts 1933 [Ex. Sess.] pp. 196, 197, § 1.

Subject only to the limitation of the amendment that if the appropriations by the Legislature in any fiscal year are greater than the money in the treasury in such year can pay, they shall be void as to the excess, the power of the Legislature to appropriate the money raised by taxation remains as before the adoption of the amendment. The Legislature may therefore determine what appropriations are most essential for the discharge of the duties imposed upon it by the Constitution, and make such appropriations absolute and payable in full; and make other appropriations not deemed so essential to the public welfare payable in full only in the event that the money in the treasury is sufficient to pay all appropriations in full, and if not sufficient to subject such appropriations to allotment and proration as provided in the Budget and Financial Control Act. Smith v. Speed, 50 Ala. 276. It follows, therefore, that the appropriations made by the Legislature not within the Budget and Financial Control Act, and which the Legislature intends to be paid absolutely and in full, are not to be prorated under the amendment, except in the event that the money in the state treasury at the end of the fiscal year available for the payment of such appropriations should be insufficient to pay them in full; in which event they must be prorated but only as between such appropriations, for under the acts of the Legislature they would then constitute the only "proper claims" to be presented and paid.

The Budget Act, as has been seen plainly, provides that all appropriations for the administration, operation, and maintenance of any department, institution, bureau, board, commission, or other state agency, shall be maximum, conditional, and proportionate, to be paid in full only in the event that the estimated budget resources during each fiscal year of the quadrennium for which such appropriations are made, are sufficient to pay all of the appropriations in full, without discrimination between them, and that the total amount of the annual appropriation to any department, institution, or agency shall not be reduced, except proportionately, as provided in section 19. Acts Extra Session 1932, p. 35 [44], § 19.

The only exception made by the act to these provisions is "per-capita appropriations now in force or hereafter made to Eleemosynary and correctional institutions and the Alabama School for Deaf and Blind at Talladega, Alabama." It follows, therefore, that upon proper requisition to the Governor, the educational appropriations of the act approved November 9, 1932, alleged in the bill, are entitled to a pro rata payment with the appropriations for all other departments, institutions, bureaus, boards, commissions, or other State agencies, without any discrimination between them; and the failure to pay such educational appropriations their pro rata share, according to the provisions of the act would be a clear violation of the provision of the Budget Act, that such appropriations should not be reduced except proportionately as therein stated, and also a plain violation of the provision of such act that such appropriation should not be paid in full unless the estimated budget resources were sufficient to pay all appropriations in full.

The amount, and therefore the sufficiency, of the appropriations for the proper administration, maintenance, and operation of the legislative, judicial, and executive departments of the state, and for securing the guaranties of the Bill of Rights, varying from time to time, was necessarily left to the discretion of the Legislature, and no other department of the state government has the power to decrease or diminish any of its appropriations therefor. Therefore the selection by another department of certain appropriations within the Budget Act to be paid in full, when the resources of the treasury are insufficient to pay all other appropriations in full, constituted an increase in the appropriations made by the Legislature for the selected departments, and an exercise of legislative authority.

Appropriations for the administration, operation, or maintenance of any department or other state agency would manifestly authorize the payment of the ordinary expenses of such department or other state agency therefrom, for otherwise it could not operate. We see no reason, therefore, for excluding "ordinary expenses" from their meaning, whether the expenses are provided for by general appropriation, or by appropriations for specific items thereof.

The Budget and Financial Control Act provides that a requisition must be made to the Governor before any appropriation shall become available. It does not appear from the bill that there has been any requisition submitted to the Governor for allotment of the educational appropriations unpaid; therefore, the bill does not show that any relief could be granted thereon, it not appearing from any averment of fact that the illegal act of paying in full other appropriations contrary to the Budget and Financial Control Act will be continued after October 1, 1933, or that there will be any necessity for an apportionment and the right to relief for the fiscal year 1932 is now a moot question.

Affirmed.

All the Special Justices concur.

MULKEY, MARTIN, and CAFFEY, Special Justices, concur in the conclusion and state their views in separate opinions.