United States Court of Appeals,

Eleventh Circuit.

No. 96-6560.

BLUE CROSS AND BLUE SHIELD OF ALABAMA, INC., Plaintiff-Counter-Defendant-Appellee,

v.

John O. NIELSEN, D.M.D., Individually and on behalf of all other persons who are similarly situated, Defendant-Appellant,

Kenneth O. Friday, George R. Bolling, individually and on behalf of all others similarly situated, Intervenor-Defendants-Counterclaimants-Appellants,

Complete Health, Inc., Samuel W. Sullivan, M.D., Movants.

July 10, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-94-L-1265-S), Seybourn H. Lynne, Judge.

Before CARNES, Circuit Judge, and HENDERSON and GIBSON[*], Senior Circuit Judges.

CARNES, Circuit Judge:

This appeal concerns the proper construction and application of three Alabama acts governing the relationship between insurers and health care providers in the state. The disposition of this appeal depends upon the resolution of these issues: (1) is Blue Cross and Blue Shield of Alabama (Blue Cross) exempt from the application of the three Alabama acts by the terms of previously enacted Alabama statutes; (2) if Blue Cross is exempt from the application of the three Alabama Acts due to the terms of those previously enacted statutes, are those exempting statutes violative of the Alabama Constitution; and (3) are those three acts preempted by the Employee Retirement Income Security Act (ERISA) insofar as they relate to ERISA-governed health benefit plans?

Although the third issue involves a question of federal law, its existence in and relevance to this case is entirely dependent upon the answers to the first two issues, each of which involve only

_____

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

questions of state law. Not only is this case fraught with unsettled issues of Alabama law, but the decision of those state law issues will affect the insurance rights of more than half of Alabama's population. For these reasons, we conclude that it is imperative for us to certify the Alabama law issues to the highest court of the state and thereby provide it with an opportunity to authoritatively decide its own state law.

## I. BACKGROUND

### A. FACTS

Blue Cross is a not-for-profit corporation organized and existing under Alabama Code §§ 10-4-100 to -115 for the purpose of providing health care service plans to subscribers.[1] It furnishes health benefits to approximately 2.2 million people in Alabama,[2] which is more than half of the state's population.[3]

In order to contain or reduce the cost of providing health care benefits to subscribers, Blue Cross enters into contracts with various health care providers. Providers that have contracts with Blue Cross are known as "network providers." Network providers usually agree to perform services for Blue Cross subscribers at discounted rates, and they agree to submit to Blue Cross' quality review, dispute resolution, and cost containment procedures.

In its health plans, Blue Cross reserves the right not to honor assignments of benefits. It also reserves the right to choose to pay either the provider or the subscriber, when a subscriber receives

---

[1] Section 10-4-100 of the Alabama Code provides:

> Any nonstock corporations organized not for profit for the purpose of establishing, maintaining and operating a health care service plan under which health services are furnished to such of the public who become subscribers to such plan pursuant to contracts are authorized and shall be governed by the provisions of this article.

Ala.Code § 10-4-100 (1975).

[2] Blue Cross informed the Court of this fact at oral argument.

[3] In July, 1996, the United States Census Bureau estimated Alabama's population at 4,273,084. *See* U.S. Bureau of the Census, *Estimates of the Population of States: Annual Time Series, July 1, 1990 to July 1, 1996* (released December 30, 1996) <http://www.census.gov/population/estimates/state/ST9096T1.txt>.

medical services from a non-network provider.  However, if a claim is received from a network provider for services to a subscriber who has network benefits, Blue Cross will pay benefits directly to the network provider.  Blue Cross guarantees that network providers will be paid for their services within a specified period of time;  no such guarantee is made to other providers.

The Alabama Legislature has forbidden many of the "managed care" practices that Blue Cross employs, at least when they are utilized by other insurance companies.  For instance, in 1984, the Legislature enacted the Dental Care Services Act (the Dental Act).  *See* 1984 Ala.Acts 411.  That act prohibits health plans and health insurance policies from denying any dentist's request to become a network provider so long as the dentist is practicing within the scope of his or her license.  *See* Ala.Code § 27-19A-3(2) (Supp.1996).  The Dental Act also prohibits a health plan from limiting the patient's selection of a dentist and from reviewing the necessity or quality of any service performed by a dentist.  *See* Ala.Code § 27-19A-3(1), (3) (Supp.1996).  It declares void all terms of plans inconsistent with the Act and criminalizes willful violations of it.  *See* Ala.Code §§ 27-19A-5, -8 (Supp.1996).

The Pharmaceutical Insurance Coverage Act (the Pharmacy Act), enacted in 1988, *see* 1988 Ala.Acts 379, prohibits health plans from denying a pharmacist's request to become a provider member of the health plan, so long as the pharmacist is properly licensed.  *See* Ala.Code § 27-45-3(2) (Supp.1996).  It also prohibits health plans from limiting a patient's selection of a pharmacist.  *See* Ala.Code § 27-45-3(1) (Supp.1996).

The Assignment Act, enacted in 1994, *see* 1994 Ala.Acts 638, requires all entities providing health insurance or health benefit plans to reimburse, within a specified time period, all health care providers for their performance of covered services.  *See* Ala.Code § 27-1-19(a) (Supp.1996).  The Assignment Act also requires insurers or other entities providing health care plans to honor all assignments of benefits, notwithstanding any terms of the insurance or health plans to the contrary.  *See* Ala.Code § 27-1-19(d) (Supp.1996).  Health care providers, as assignees, are provided a right to sue to collect the assigned payment.  *See id.*

We will refer to the Dental Act, the Pharmacy Act, and the Assignment Act collectively as

"the Alabama Provider Acts."

## B. PROCEDURAL HISTORY

Blue Cross filed this action, seeking declarations that the Assignment Act is preempted by ERISA insofar as it relates to ERISA-governed plans, and that because of Alabama Code § 10-4-115 and § 27-1-4, Blue Cross is not bound by the Assignment Act. Blue Cross also sought to permanently enjoin the enforcement of the Assignment Act against it and its employee welfare benefit plan sponsors. Blue Cross named John O. Nielsen, D.M.D., a licensed dentist practicing in Alabama, as a defendant. Blue Cross sued Nielsen both individually and as the representative of a class of all health care providers who have claimed or may claim in the future rights under the Assignment Act.

Kenneth O. Friday, a licensed Alabama dentist, and George R. Bolling, a licensed Alabama pharmacist, filed a motion to intervene in this case as defendants and as class representatives. After the district court granted that motion, Friday and Bolling counterclaimed against Blue Cross for damages arising out of Blue Cross' alleged violation of the Dental Act and the Pharmacy Act. Friday and Bolling also sought an injunction to prevent Blue Cross from excluding them from participating as network providers in Blue Cross health benefit plans.

Blue Cross filed a motion for summary judgment on its complaint and Friday and Bolling's counterclaims. The district court certified three defendant classes for the purposes of deciding Blue Cross' motion and then granted summary judgment to Blue Cross on the first two counts of its complaint and on the intervenors' complaint. The court held that ERISA preempts the Alabama Provider Acts insofar as they relate to ERISA plans. It also held that § 10-1-115 and § 27-1-4 of the Alabama Code exempt all Blue Cross plans from the applicability of the Alabama Provider Acts, anyway. Finally, the court rejected the defendants' argument that the exempting statutes violate the Alabama Constitution.

The defendants, whom we will refer to hereafter as "the providers," timely appealed the district court's grant of summary judgment in favor of Blue Cross.

## II. DISCUSSION

We begin our discussion by describing the parties' positions on the state law issues.

A. THE STATE STATUTORY CONSTRUCTION AND INTERPRETATION ISSUES

First, Blue Cross contends that the Alabama Provider Acts do not apply to it, because two Alabama statutes purport to exempt Blue Cross from otherwise applicable regulation under Alabama's Insurance Code, Title 27 of the Code of Alabama. In 1939, the Alabama Legislature enacted what is now section 10-4-115 of the Alabama Code, which presently provides that:

> [n]o statute of this state applying to insurance companies shall be applicable to any corporation organized under the provisions of this article [tit. 10, ch. 4, art. 6] and amendments thereto or to any contract made by such corporation unless expressly mentioned in this article and made applicable; except, that such corporation shall be subject to the provisions regarding annual premium tax to be paid by insurers on insurance premiums.

Ala.Code § 10-4-115 (1975).[4] Blue Cross is organized pursuant to Alabama Code §§ 10-4-100 to -115. Thus, the language of § 10-4-115 appears to exempt Blue Cross from insurance regulatory laws enacted after 1939, except where the Alabama Legislature has expressly amended §§ 10-4-100 to -115 to make such Laws applicable to Blue Cross.

In addition, since 1971 the Insurance Code (Title 27), which now includes the Alabama Provider Acts, has contained a provision specifying that that entire title shall not apply to:

> ...
>
> (2) Non-profit corporations for establishment of hospitalization plan under § 10-4-100, *et seq.,* except to the extent now or hereafter provided in such laws....

Ala.Code § 27-1-4 (1975).[5] Because Blue Cross is a § 10-4-100 corporation, the language of § 27-1-

---

[4]The original statutory provision provided as follows:

> No statute of this state applying to insurance companies shall be applicable to any corporation organized under the provisions of this article and amendments thereto or to any contract made by such corporation unless herein expressly mentioned and made applicable.

1940 Ala.Code tit. 28, § 316. The exception for insurance premium tax laws was added in 1969. *See* 1969 Ala.Acts 27 § 1. The Legislature made technical amendments to the exception clause in 1993. *See* 1993 Ala.Acts 679 § 8. That clause is not involved in the issues before us.

[5]The predecessor to § 27-1-4 contained language identical to the current provision, except that it did not cross-reference §§ 10-4-100, *et seq. See* 1971 Ala.Acts 407 § 12. Instead, it cross-referenced "Title 28, Chapter 10, Article 3 of the Alabama Code, 1940," which is the predecessor to §§ 10-4-100, *et seq. See* 1971 Ala.Acts 407 § 12.

4, too, seems to preclude the Alabama Provider Acts from applying to Blue Cross unless the Legislature amends §§ 10-4-100 to -115 to specify that they do apply. None of the Alabama Provider Acts expressly amended those sections.

Faced with § 10-4-115 and § 27-1-4 (hereinafter, "the exempting statutes") the providers offer several principles of statutory interpretation that, they claim, cause the Alabama Provider Acts to trump the previously enacted exempting statutes. First, the providers argue that courts must give effect to legislative intent as expressed in the plain language of the Alabama Provider Acts. The providers note that the Assignment Act purports to cover "non-profit health service organizations," *see* Ala.Code § 27-1-19(a) (Supp.1996), while the Dental Act and the Pharmacy Act purport to apply to all "employee benefit plans" and "health insurance polic[ies]," *see* Ala.Code §§ 27-19A-2(3), 27-45-3 (Supp.1996). That plain albeit generic language in the Alabama Provider Acts clearly covers Blue Cross and its health plans, the providers argue, and that manifest legislative intent must be given effect, notwithstanding any indication to the contrary in the exemption statutes.

The providers also contend that, if read literally, § 10-4-115 would lead to an absurd result. The result would be absurd, they say, because that exempting statute purports to reach all legislation applying to insurance companies, not just insurance regulatory legislation. The providers claim that the Alabama Legislature could not have intended to provide Blue Cross with such sweeping exemptions from otherwise applicable law. Because the plain language of § 10-4-115 would lead to an absurd result, the providers suggest that the statute should be read narrowly, citing *Abramson v. Hard,* 229 Ala. 2, 155 So. 590, 593 (1934) (holding that courts should look beyond plain meaning of statute when such a construction of the statute would lead to absurd results). However, the providers do not make a parallel argument that a literal interpretation of § 27-1-4 would lead to absurd results.

Next, the providers contend that the latest expression of legislative will governs the interpretation of conflicting statutes. *See e.g., State v. Crenshaw,* 287 Ala. 139, 249 So.2d 622, 624 (1971) (holding that where two provisions in a statute are in irreconcilable conflict, the latest expression of legislative will controls). The providers maintain that the Alabama Provider Acts are

in direct conflict with the exempting statutes regarding the applicability to Blue Cross of the Alabama Provider Acts. Because all of those acts were enacted after the exempting statutes, they are the more recent expression of legislative will and therefore prevail over the conflicting language of the previously enacted exempting statutes, it is argued.

Winding up their statutory construction arguments, the providers urge us to treat the exempting statutes as rules of statutory construction that merely prevent insurance laws from unintentionally covering Blue Cross. They win under such an approach, they say, because the Alabama Provider Acts demonstrate clear legislative intent to cover Blue Cross. In other words, the providers claim that the Alabama Provider Acts' intentional coverage of Blue Cross overcomes what are merely codified rules of statutory construction contained in the exempting statutes.

Not surprisingly, Blue Cross cites several different statutory construction principles in its arguments against the applicability of the Alabama Provider Acts. According to Blue Cross, we should begin our analysis with the principle that lawmakers are presumed to know the existing law when they act. *See, e.g., Ex Parte Louisville & N.R. Co.,* 398 So.2d 291, 296 (Ala.1981) (presuming state legislature knew, when it enacted taxing statute, that state was precluded by the Commerce Clause from taxing certain transactions covered by the statute). In accordance with that principle, Blue Cross contends that we should assume that the Alabama Legislature was aware of the explicit amendment requirement in the exempting statutes when it enacted the Alabama Acts. Blue Cross further argues that application of this principle of Alabama statutory construction law is supported by the history of the exempting statutes. In compliance with the exempting statutes, the relevant article (Title 10, Chapter 4, Article 6) of the Alabama Code has been amended twice to make insurance regulation expressly applicable to corporations organized under that chapter. *See* 1993 Ala.Acts 679; 1969 Ala.Acts 27. Blue Cross claims that those amendments demonstrate that the Alabama Legislature knows how to amend the Code in compliance with the exempting statutes when it intends for new laws to apply to Blue Cross. The Legislature did not do so when it enacted the Alabama Provider Acts, and that failure is telling, Blue Cross says.

According to Blue Cross, in deciding whether it is exempt from the application of the

Alabama Provider Acts, we should not apply the principle that the later expression of legislative intent controls. That principle applies only when statutes are inescapably repugnant to each other, *see, e.g., Ex parte Jones,* 212 Ala. 259, 102 So. 234, 235 (1924), and the exemption statutes and the Alabama Provider Acts are not inescapably repugnant, the argument runs, but may instead be read to be consistent with each other.

Escape from any apparent conflict between the exempting statutes and the Alabama Provider Acts is possible, Blue Cross suggests, if we give the more specific enactments greater weight than the general ones. By "specific," we understand Blue Cross to mean "specifically applicable." Blue Cross claims that the exempting statutes apply only to it and a narrow class of not-for-profit corporations. By contrast, the Alabama Provider Acts apply to all health insurance companies, providers of benefit plans, and so forth. Because the exempting statutes are more specifically applicable to Blue Cross, it claims that those statutes provide the most reliable indication of the Alabama Legislature's intent regarding regulation of Blue Cross.

Blue Cross also points out that implied repeals are disfavored under Alabama law, and that a later statute does not impliedly repeal an earlier one unless the later statute demonstrates an unambiguous legislative intent to do so. *See Shepherd v. Clements,* 224 Ala. 1, 141 So. 255, 256 (1931) (recognizing presumption that general law does not impliedly repeal local statute). According to Blue Cross, the Alabama Legislature did not clearly demonstrate through use of generic phrases such as "non-profit health service organizations," "health plans," or otherwise that it intended to make the Alabama Provider Acts applicable to Blue Cross.

## B. THE STATE CONSTITUTIONAL ISSUES

The statutory construction issues we have discussed are not the only state law issues at play in this case. Alabama constitutional law issues loom as well. If the exempting statutes, §§ 10-4-115 and 27-1-4, are interpreted to prevent the Alabama Provider Acts from applying to Blue Cross, then the providers contend that the exempting statutes violate the Alabama Constitution for two reasons. The first reason, according to the providers, is that the exempting statutes are an attempt by earlier legislatures to impose a requirement for the passage of legislation on subsequent legislatures which

is over and beyond those requirements found in the Alabama Constitution. In *Tayloe v. Davis,* 212 Ala. 282, 102 So. 433 (1924), the Court held that a section of a budget act that imposed a super-majority voting requirement for amending the act violated the Alabama Constitution. *See id.* The same is true of the exempting statutes, according to the providers.

In response, Blue Cross points out that Alabama applies a strong presumption of constitutionality to its statutes. *See, e.g., The City of Birmingham v. Graffeo,* 551 So.2d 357, 363 (Ala.1989) ("Every presumption is in favor of the constitutionality of an act of the legislature and this Court will not declare it invalid unless in its judgment, the act clearly and unmistakably comes within the inhibition of the Constitution.") (citing *Mobile Housing Board v. Cross,* 285 Ala. 94, 229 So.2d 485, 487 (1969)). Blue Cross contends that *Tayloe* cannot be used to overcome that presumption in this case, because the statute struck down in *Tayloe* violated a specific provision in the Alabama Constitution: the majority vote rule. According to Blue Cross, the exempting statutes at issue here do not violate any specific provision in the Alabama Constitution.

Moreover, Blue Cross argues that the exempting statutes do not require subsequent Alabama legislatures to satisfy burdensome extra-constitutional procedures in enacting laws; instead, those statutes merely require subsequent legislatures to make explicitly clear their intent to regulate Blue Cross, either by amending Title 10, Chapter 4, Article 6, or perhaps by mentioning Blue Cross in the new act. At least implicit in Blue Cross' position is the premise that the Alabama Constitution permits a legislature to impose explicitness requirements upon the enactments of future legislatures.

Even if they lose their *Tayloe* doctrine argument, the providers have another arrow in their state constitutional quiver, a second reason the exempting statutes are unconstitutional. Article IV, § 108 of the Alabama Constitution, specifies that:

> The operation of a general law shall not be superseded for the benefit of any individual, private corporation, or association; nor shall any individual, private corporation, or association be exempted from the operation of any general law except as in this article provided.

Ala. Const. art. IV, § 108. According to the providers, the exempting statutes run afoul of that constitutional prohibition by affording Blue Cross a greater immunity from legislation affecting insurance companies than that which is available to other insurance companies. Blue Cross responds

that the providers' argument misses the mark, because Blue Cross is not an insurance company. Instead, it is a special purpose corporation established and regulated by Alabama Code §§ 10-4-100 to -115, which Blue Cross contends exempts a class of corporations, including itself, from insurance regulation. Because the exempting statutes do not exempt only Blue Cross from regulation under the Insurance Code, they do not run afoul of Article IV, § 108. Or so Blue Cross says.

## C. WHY CERTIFICATION OF THE STATE LAW ISSUES IS APPROPRIATE

There is no way for us to avoid the state law issues in this case. We have not yet decided the ERISA preemption issue, the only federal question in the case, and we do not mean to imply any view on it. However, even if we were to assume for present purposes that each of the Alabama Provider Acts is preempted by ERISA, the same state law issues would remain for decision. The reason is that ERISA covers only employee benefit plans. *See* 29 U.S.C. § 1003. Blue Cross offers some insurance policies and plans that do not fall within the scope of ERISA; they are governed by state law free of ERISA. Nevertheless, those non-ERISA policies and plans are within the scope of the pleadings and the district court's decision in this case by virtue of pendent jurisdiction, *see* 28 U.S.C. § 1367(a), and the state law issues must be decided before we can dispose of that part of this appeal. So, the state law issues are unavoidable. The question is who should decide those issues, and we do not think that is a close question at all.

The final arbiter of state law is the state supreme court, which is another way of saying that Alabama law is what the Supreme Court says it is. *See, e.g., Sultenfuss v. Snow,* 35 F.3d 1494, 1504 (11th Cir.1994) (Carnes, J., dissenting) ("From our perspective, state law is what the state supreme court says it is, and a state supreme court's pronouncements on the subject are binding on every state and federal court."). Because the only authoritative voice on Alabama law is the Alabama Supreme Court, it is axiomatic that that court is the best one to decide issues of Alabama law.

Having the most authoritative voice on Alabama law decide the state law issues in this case is especially important because the decision will affect the rights of so many of the state's citizens, perhaps more than half. Adjustment of the rights and interests of insurers, health care providers, and insureds is a subject matter that falls squarely within the zone of traditional state regulatory

concerns. The question to be decided is exactly how the State of Alabama has chosen to regulate its largest health insurer.

At the threshold, the answer to that question depends upon reconciliation of the competing trajectories of a number of canons of statutory construction. Given the nature of the overlapping and somewhat contradictory canons of statutory construction arguably applicable to this case, and the competing interests and policies at stake, the task is less like applying a scientific formula and more like painting a picture. We could take up the brush ourselves, but we are not at all confident our painting would resemble the one the Alabama Supreme Court would have produced.

It is even more imperative that any state constitutional law issues in this case be decided by the state supreme court. Given the sensitivity of such matters and how closely they sound to the heart of a state's self-government, a federal court should not purport to hold that a state statute violates the state constitution, except as an unavoidable matter of last resort. Federalism and comity require at least that much deference to state courts on ultrasensitive state law matters.

For all of these reasons, we conclude that it would be irresponsible of us not to give the Alabama Supreme Court an opportunity to decide the difficult, sensitive, and dispositive Alabama law issues presented in this appeal.[6] Fortunately, we have a procedure for giving it that opportunity. Certification of state law issues to state supreme courts is a valuable tool for promoting the interests of cooperative federalism. We, more than any other circuit, use that tool. *See* Jona Goldschmidt, American Judicature Society, *Certification of Questions of Law: Federalism in Practice* 28 (1995) (noting that during a five-year period "the Eleventh Circuit has by far certified the most questions (49) of any circuit," with the average number certified by all circuit courts during the same period being 14.5). We will use it here.

We realize, of course, that the last two times this Court certified questions of state law to the

---

[6]By "dispositive" we mean that regardless of which way the Alabama Supreme Court decides the state law issues, its decision will dispose of the part of this case involving all of Blue Cross' non-ERISA policies and plans. As to the ERISA-governed policies and plans, if the Alabama Supreme Court decides in Blue Cross' favor on both issues we certify, its decision will moot the ERISA preemption issue and dispose of the remainder of the case. If the Alabama Supreme Court decides either certified question in favor of the providers, we will decide the ERISA preemption issue upon return of the answers to us.

Alabama Supreme Court, it declined to answer them, *see Moreno v. Nationwide Ins. Co.,* 114 F.3d 168 (11th Cir.1997); *Colonial Properties v. Vogue Cleaners,* 86 F.3d 210, 211 (11th Cir.1996), as it has every right to do. In the absence of any clearer indication than that, we will not assume the Alabama Supreme Court has, for whatever reason, adopted a policy or practice against answering certified questions from this Court. Perhaps this case, as compelling an example of the need for certification of state law issues as we have seen, will provide a clearer indication of whether the procedure is still viewed with favor by our state court colleagues.

## D. THE CERTIFIED QUESTIONS

For the foregoing reasons, we certify to the Alabama Supreme Court the following questions:

(1) Is Blue Cross and Blue Shield of Alabama exempted by § 10-4-115 and § 27-1-4 of the Alabama Code from the application of § 27-1-19, §§ 27-19A-1 to -11, and §§ 27-45-1 to -9?

(2) If the answer to the first question is in the affirmative as to any of those three acts, are § 10-4-115 and § 27-1-4 invalid under the Alabama Constitution to that extent?

Our statement of the questions to be certified is not meant to limit the scope of inquiry by the Supreme Court of Alabama:

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriquez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968) (citations omitted).

The entire record in this case, together with copies of the briefs of the parties and amici curiae, is transmitted herewith.

QUESTIONS CERTIFIED.