## DICKINSON, STATE AUDITOR *v.* EDMONDSON.

### SPRADLIN *v.* DICKINSON, STATE AUDITOR.

### Opinion delivered July 12, 1915.

1. PUBLIC FUNDS—NECESSITY FOR APPROPRIATION.—Under Art. 5, § 29, Const. 1874, which provides that "no money shall be drawn from the treasury except in pursuance of specific appropriation made by law * * *", *held*, that all State funds within the purview

of that provision, must be held in the treasury, until the Legislature has made a specific appropriation thereof.

2. PUBLIC FUNDS—USE OF—NECESSITY FOR APPROPRIATION.—The power of the General Assembly with respect to the public funds raised by general taxation, is supreme, and no State official, has any power to create an obligation of the State, either legal or moral, unless there has first been a specific appropriation of funds to meet the obligation.

3. SCHOOLS—SCHOOL FUNDS—DISBURSEMENT.—The public school funds of the State are to be governed by Art. 14, of the Const. of 1874, and not by Art. 5, § 29, of the Const., said Art. 14, setting apart the school fund for the specific purpose named, and is tantamount to the constitutional appropriation of the funds for the maintenance of the common schools, and it was not contemplated that a special appropriation of these funds by the law-makers was necessary to make the funds available.

4. SCHOOLS—COMMON SCHOOL FUNDS—LEGISLATIVE APPROPRIATION—HIGH SCHOOLS—NORMAL TRAINING SCHOOLS.—The Legislature has power to make appropriations of money out of the common school funds for high school purposes and for establishing normal training departments, and that being so, it is not necessary for the Legislature to renew that appropriation every two years.

5. SCHOOLS—COMMON SCHOOLS—HIGH SCHOOLS.—The establishment of high schools is within the limits of common school education, within the meaning of the Constitution, and the Legislature has the power to adapt our schools to the most advanced standards, so as to give to the youth of the State, the best education obtainable on all subjects.

6. SCHOOLS—COMMON SCHOOLS—NORMAL TRAINING.—The Legislature has power to provide for normal training in the high schools of the State. *Semble*, the establishment of separate normal schools for the education of teachers is not a part of the common school system.

7. SCHOOLS—COMMON SCHOOL FUND—USES.—The common school fund can not be spent save for the instruction of persons between the ages of six and twenty-one years.

8. SCHOOLS — COMMON SCHOOL FUND — DISBURSEMENT — UNIFORMITY.— There must be uniformity in the disbursement of the common school fund.

9. SCHOOLS—COMMON SCHOOL FUND—IMPROPER DISBURSEMENT.—Act 328, page 299, Public Acts of 1911, *held* invalid insofar as it attempted to segregate fifty thousand dollars of the common school funds, and arbitrarily distribute it among certain classes of beneficiaries.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Wm. L. Moose,* Attorney General, and *Jno. P. Stree-pey,* Assistant, for appellants; *J. Bernhardt, D. A. Brad-ham, Coleman & Lewis* and *Wallace Townsend,* of counsel.

1.   The act is not unconstitutional on the ground that it seeks to divert common school funds to a purpose other than that for which they were raised.   High schools are common schools within the contemplation of the act, a part of the common school system of the State.   25 Am. & Eng. Enc. of L. (2 ed.), 8; 35 Cyc. 812; 123 Mass. 304; 30 Neb. 815, 47 N. W. 284; 61 Kan. 792, 33 Pac. 654.

2.   The act does not conflict with section 29, article 5, Constitution.   The facts in the case of *Moore* v. *Alexander,* 85 Ark. 171, and in this case, are so different that the ruling in that case does not control in this.   See article 14 of the Constitution.   Section 3 of that article makes a *constitutional* levy and appropriation of taxes for school purposes.   Nothing is left to the discretion of the Legislature, either as to the levy or the appropriation of the tax, and by both sections 2 and 3 of the article it is expressly provided that the money raised for the common school fund shall never be appropriated to any other purpose than that for which raised.   Section 4 of article 14 gives supervision of the schools, and the execution of the laws to such officers as may be provided by the General Assembly—thereby leaving the details of the disbursement of the school fund to such officers as might be provided by the Legislature.   See Kirby's Digest, § 7521; Act No. 328, Acts 1911.

This case is controlled by section 12 of article 16 of the Constitution, and not by section 29 of article 5, because this is a levy and appropriation made, not by the Legislature, but by the Constitution.   While the act in question uses the word appropriation, it is not in fact an appropriation.   It is nothing more than an apportionment of a fund that has already been appropriated.   93 Ark. 503, 512.

The fact that the school fund is levied and appropriated by the Constitution makes it an appropriation "by

law" within the terms of section 12, article 16, *supra.* 8 L. R. A. 403; 4 Md. 89; 24 Idaho, 26, 132 Pac. 109.

*W. O. Edmondson, pro se.*

1. The act should be declared unconstitutional because it seeks to divert funds to other uses than that for which they were levied and collected. It contains many provisions incompatible with the well established understanding and definition of "common schools" and contrary to the express provisions of our Constitution. 13 Barb. 400-410; 94 Mass. 500-508; 20 L. R. A. (N. S.) 1033; Act No. 238, Acts 1911, § § 4, 7, 8, 10; article 14, section 3, Constitution.

2. The act is void because it seeks to make a continuing appropriation. This tax is in no sense a constitutional levy nor a constitutional appropriation. This case is controlled by the law announced in the case of *Moore* v. *Alexander,* 85 Ark. 171. The Constitution of the State is restraining, not enabling. 27 Ark. 629. Its provisions are not self-executing. 24 Ark. 500. See also Cooley's Const. Lim. (4 ed.), 101.

*Allyn Smith,* for appellant Spradlin.

The State Treasurer has no authority to pay out money that may be in the treasury under our common school law, without an appropriation by the Legislature. 85 Ark. 171, 178; 93 Ark. 503; 13 Kan. 220-227; 47 Kan. 119.

McCULLOCH, C. J. We have considered both of these cases together, as they involve kindred questions which may be covered by one general discussion. At any rate, they pertain to the same subject—the common school fund of the State—and the consideration of each case involves, to some extent, the other.

In the first case, W. O. Edmondson and J. G. Albright, two citizens and taxpayers of the State, seek to enjoin the Auditor and Treasurer from issuing warrants and paying out common school funds of the State pursuant to an act* of the General Assembly of 1911, appropriating the sum of $50,000 to be used in aid of high

*Act 328, page 299, Public Acts of 1911. (Rep.).

schools and in providing normal training departments to said schools. The chancellor granted the relief prayed for by the plaintiffs, and the Auditor and Treasurer have appealed.

In the other case, B. A. Spradlin, a citizen and taxpayer of the State, seeks to restrain the Auditor and Treasurer from disbursing the common school fund of the State on the ground that there has been no appropriation made by the Legislature authorizing such disbursements. The chancellor denied the relief sought in that case, and rendered a decree dismissing the complaint for want of equity, from which decree the plaintiff has prosecuted an appeal.

The principal contention in both of the cases is that the following provision of the Constitution applies to the common school fund: "No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriation shall be for a longer period than two years." Section 29, article 5, Constitution of 1874.

(1-2) The General Assembly of 1913 did not pass any bill making appropriation of the school funds of the State. In fact, it may be said, as a part of the history of the legislation of the State, that it has never been deemed necessary by the law-makers to make an appropriation of school funds, and that has never been done. It is insisted now, for the first time, that the provision of the Constitution referred to applies to the school funds, and that none of the funds can be paid out in the absence of a specific appropriation thereof by the General Assembly. Counsel, asserting that view, rely upon the case of *Moore* v. *Alexander*, 85 Ark. 171, where we held that the Capitol fund collected pursuant to a special tax levied for the purpose of building a State Capitol could not be paid out unless there had been a biennial appropriation specifying the amount to be used. It was insisted in that case that the clause of the Constitution referred to above applied only to the ordinary expenses of the State Government to

be paid out of the general revenue, and that it had no application to the levy of a special tax for a specified purpose such as building the State Capitol.  We refused to recognize that distinction, and held that the provision was more general in its nature than that construction would warrant, and applied at least to all revenues raised for State purposes.  We are unwilling to recede from the position taken in that case, for it is plain that the framers of the Constitution intended to place an unmistakable limitation upon the authority of public officials in paying out public funds, and to declare that all the State funds which are within the purview of that provision must be held in the treasury, until a specific appropriation thereof has been made by the Legislature.  The power of the General Assembly with respect to the public funds raised by general taxation, is supreme, and no State official, from the highest to the lowest, has any power to create an obligation of the State, either legal or moral, unless there has first been a specific appropriation of funds to meet the obligation.  The Constitution provides, too, that no appropriation shall be for a longer period than two years, and thus a period is fixed over which the law-makers hold complete control over the purse-strings of the State.

But the question of the application of this provision of the Constitution to the common school fund is another thing.  The provision referred to above is contained in article 5, which deals with the powers and duties of the General Assembly.  The Constitution, in another article (14), deals entirely with the school tax, and that subject was by the framers of the Constitution lifted entirely outside of the scope of any other specific regulation.  It is worth while to copy that article in full, and it is as follows:

"Section 1.  Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good Government, the State shall ever maintain a general, suitable and efficient system of free schools, whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction.

"Sec. 2.  No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.

"Sec. 3.  The General Assembly shall provide by general laws for the support of common schools by taxes, which shall never exceed in any one year two mills on the dollar on the taxable property of the State, and by an annual *per capita* tax of one dollar, to be assessed on every male inhabitant of this State over the age of twenty-one years.  Provided, the General Assembly may by general law authorize school districts to levy by a vote of the qualified electors of such district a tax not to exceed five mills on the dollar in any one year for school purposes.  Provided, further, that no such tax shall be appropriated to any other purpose nor to any other district than that for which it was levied.

"Sec. 4.  The supervision of public schools and the execution of the laws regulating the same shall be vested in and confided to such officers as may be provided for by the General Assembly.''

(3)  Section 3 has been amended so as to increase the State school tax from two mills to three mills, and also to increase the district school tax, but in all other respects the section remains the same.  This provision is self-executing, except that the General Assembly has the power, biennially, to determine what percentage of the school tax up to the maximum shall be levied, and also that the electors of the school districts of the State shall determine how much of the district tax may be levied.  The Constitution sets apart the fund for the purpose named, and it can be used for no other.  It is, in other words, a constitutional appropriation of the funds for the maintenance of the common schools, and it was not contemplated that a special appropriation of those funds by the law-makers was necessary to make the funds available.  No reason can be suggested why the framers of the Constitution could have intended to confer upon the Legislature the power to withhold the school funds from the use named, or to make the right to disburse the funds de-

pend upon an appropriation for each separate fiscal term. The thought pervading the whole article covering the subject of school funds is that the funds thus raised shall be used continuously for the purpose of maintaining free schools, not to hoard up the money for particular uses, but to distribute the same by some just method so that year by year the common schools of the State could be maintained. No one can doubt that those who framed this provision had in mind that schools were to be conducted during each year, and that the funds would be dedicated to that use as soon as practical after the money came into the treasury. There is no limitation upon the power of the Legislature with respect to the manner of distributing or using the funds, except that it shall be for common school purposes. The command of the Constitution is to provide by general laws "for the support of common schools," and that necessarily meant to maintain a system of free schools as complete as can be, and continuous in its operations. Our conclusion is, therefore, that there is no necessity for an appropriation of the common school funds, and that the chancellor was correct in so deciding in the Spradlin case.

(4) We are also of the opinion that if the Legislature had the power to appropriate $50,000 for the purposes named in the act of 1911, that amounted to a continuing appropriation and was valid, since the general provision for biennial appropriations has no reference to school funds. The Legislature has, as already stated, the power to specify how the funds shall be used within the constitutional limitation that they can only be used for common school purposes. It can designate the functionaries through whom the funds may be distributed, and can ascertain the basis upon which such distribution may be made, and that need not be done every two years, but can be regulated by fixed law. In other words, if the Legislature had the power to make appropriation of money out of the common school funds for high school purposes and for establishing normal training departments to be used in the manner indicated in the above named statute, it is

not necessary to renew that appropriation every two years.

There are other features of the act of 1911, however, which can not escape our attention. It appropriates $40,-000 out of the common school funds to be used in "developing and aiding high schools," and $10,000 "for the purpose of normal training in normal training departments to said high schols." The constitutional limitation upon the application of this fund is to common school purposes. It is too narrow a view to take of the subject, however, to say that high schools do not fall within the term "common schools" as used in the Constitution.

(5-6) There is a constant effort to raise the standard of education, and, happily for the people of our State, the effort has not failed to meet with a considerable measure of success. The establishment of high schools is within the limits of common school education, because it merely raises the standard of popular education. High schools are free schools within the meaning of the Constitution, and also common schools within the meaning of that term as used. Nor can it be said to offend against the provisions of the Constitution for the Legislature, in the effort to raise the standard of education within constitutional limits, to specify additional subjects to be covered within the high school training. Progressive thought suggests many subjects to be covered in the common school course of instruction, and the Legislature has the power to adapt our schools to the most advanced standards so as to give to the youth of the State the best education obtainable on all subjects. We see no reason, therefore, why the Legislature can not provide that normal training may be conducted in the high schools of the State. That is preparatory to a useful vocation in life, and, after all, that is what education is for.

All the authorities which deal with the subject seem to be unanimous in holding that the establishment of separate normal schools for the education of teachers is not a part of the common school system, and we entertain no doubt of the correctness of that position.

The Supreme Court of Washington, in a well considered case, decided that separate normal schools could not be maintained out of the common school fund. The court gave a definition of the common school as "one that is common to all children of proper age and capacity," and in disposing of the matter the court said: " To take from the one and give to the other by indirect methods that which was designed for a special purpose would defeat the whole scheme of the law, and open a way for the ultimate transposition of funds held under a most sacred trust. Courts have been zealous in protecting the money set apart for the maintenance of the free schools of the country. They have turned a deaf ear to every enticement, and frowned upon every attempt, however subtle, to evade the Constitution. Promised benefit and greater gain have been alike urged as reasons, but without avail. They have endeavored to say in unmistakable terms that the common school fund is just what it purports to be, a fund to be used for the sole purpose of supporting the graded schools of the commonwealth under the sanction of fixed and uniform laws. It follows that all experiments in education must be indulged, if at all, at the expense of the general fund." *School District No. 20, Spokane County* v. *Bryan,* 51 Wash. 498, 99 Pac. 28, 20 L. R. A. (N. S.) 1033.

Other decisions bearing with more or less effect upon that question are to be found. *People, ex rel.* v. *Board of Education,* 13 Barb. (N. Y.) 400; *Gordon* v. *Cornes,* 47 N. Y. 608; *State Female Normal School* v. *The Auditors,* 79 Va. 233; *Underwood* v. *Wood,* 93 Ky. 177, 15 L. R. A. 825; *Collins* v. *Henderson,* 11 Bush. (Ky.) 74.

(7-8) There are, however, certain limitations found in the Constitution, and one is the express limitation that the common school fund shall be devoted to the establishment of "free schools whereby all persons in the State between the ages of six and twenty-one may receive gratuitous instruction." The common school fund can not be spent save for the instruction of persons between those ages. And another provision which we must read into it is that of uniformity, for the fund is manifestly intended

for the common benefit of all of the people of the State. The Legislature has no authority to select an arbitrary basis for the disbursement of the funds, but must do so upon some just basis relating either to the scholastic population or the general population of each locality or the amount of taxes paid, or some such equal and uniform basis of distribution. The Constitution expressly provides for uniformity of taxation, but there is no express provision with respect to the uniformity of disbursement. However, in the very nature of the subject there must be uniformity, otherwise the use of the fund would not be for the common benefit of the people.

(9)    Now, there are several features of this act which we think are so discriminatory that they violate the doctrine of uniformity in the disbursement of the funds. In the first place, the State High School Board is authorized to select the particular high schools that are to be aided, and there is a general provision that no aid shall be granted to a school in any city or town having over 3,500 inhabitants. There is still another provision that pupils of any age shall be received in the normal training department of the high schools, and that violates the express provision of the Constitution with respect to age limits.

In the State of Virginia, the Constitution authorizes the establishment of normal schools, but the court of appeals of that State, speaking on the subject, said: "It is clear that the normal schools provided for by the Constitution, are intended to be part of the educational system of the State; but if they are to be considered as part of the public free school system, they are required by the Constitution to be uniform, and as to each school district equal upon the basis of school children therein, and by the said third section their equal and full introduction into all the counties of the State is required." *State Female Normal School* v. *The Auditors, supra.*

The other cases hereinbefore cited illustrate the strictness of the rule of uniformity in the disbursement of the common school fund.

We are of the opinion that the Legislature has exceeded its powers in the enactment of this statute so far as relates to the method of disbursing the funds. The common school funds can not be distributed in a partial manner so as to discriminate between different localities. If the Legislature has the power to take forty thousand dollars of the common school fund and use it for aiding rural high schools, it has the power to take an hundred thousand dollars of it and use it in the aid of a high school in the largest city in the State. Either constitutes an unequal distribution of the funds which prevents uniformity in the enjoyment of the funds.

Our conclusion is that the chancellor was correct in restraining the Auditor and Treasurer from using the common school funds in the manner specified in the act of 1911, not because a reappropriation is required every two years, but because the act itself is void in attempting to segregate fifty thousand dollars of the common school funds and arbitrarily distribute it among certain classes of beneficiaries.

The decree in each case is therefore affirmed.

KIRBY, J., concurs in No. 3719.

KIRBY, J., dissents in No. 3756.