## SMITH v. PAGE.

### 4-4126

Opinion delivered March 2, 1936.

*Griffin Smith,* for appellants.

*Carl E. Bailey,* Attorney General, and *Thomas Fitz-hugh,* Assistant, for appellees.

HENRY ARMISTEAD, Special C. J. The action from which this appeal arises was filed in Pulaski Chancery Court, June 17, 1935, by appellant, as a taxpayer, and State Comptroller, against the Auditor and Treasurer of State, alleging that the Legislature of 1933 failed to appropriate funds for the payment of salaries of prosecuting attorneys for the period from July 1, 1933, to June 30, 1935; that the prosecuting attorneys hold salary vouchers or warrants for part of this period, issued under the provisions of act 227 of 1935; that unless restrained the Treasurer will pay these warrants from current cash balances standing to the credit of the general revenue fund, or the general revenue sinking fund, and the Auditor will issue certificates of indebtedness to prosecuting attorneys covering salary installments for which no appropriation was made. It was asked that the Treasurer and Auditor be enjoined from doing these things, which were alleged to be illegal because of no legislative appropriation or the limited appropriation under act 227. The defendants demurred to the complaint. September 12, 1935, the court sustained the demurrer and dismissed the complaint, and also enjoined the issuance or payment of warrants based on allowances under act 227 and ordered the cancellation thereof and the issuance of warrants for the unpaid salaries and their payment from the current general revenue fund.

The question presented is whether the relevant provisions of the Constitution of Arkansas are to be construed as requiring a legislative appropriation before the salaries of prosecuting attorneys can be paid or whether the Constitution authorizes such payment without legislative appropriation. We hold that the Constitution provides a continuing appropriation, for this purpose, and that the salaries may be paid without legislative appropriation.

Prosecuting attorneys are constitutional State officers, § 24, art. 7, Const.; *Griffin* v. *Rhoton*, 85 Ark. 89, 107 S. W. 380, acting in a *quasi*-judicial capacity. *Holder* v. *State*, 58 Ark. 473, 25 S. W. 279; 481. Section 2, art. 19, Const., provides: "* * * Prosecuting attorneys shall each receive a salary, to be established by law, which shall not be increased or diminished during their respective terms * * * provided, that the salaries * * * herein mentioned * * * shall never exceed per annum * * * the sum of $400." (The Constitution permits and the statute provides that they shall also receive fees, the maximum for salary and fees being $5,000 per annum. Sec. 23, art. 19).

Section 28, Schedule, provides that this salary is to be paid per annum "for their services" for the period of two years from the adoption of this Constitution, and until otherwise provided by law.

The salary has since been fixed at $200 per annum, ($400, 7th Circuit), act June 2, 1911; § 8692, Crawford & Moses' Digest; act March 4, 1933.

The constitutional provisions on the subject of legislative appropriations and payments and fixing of salaries are as follows: Section 29, art. 5: "No money shall be drawn from the treasury except in pursuance of specific appropriations made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years."

Section 30, art. 5: "The general appropriation bill shall embrace nothing but appropriations for the ordinary expense of the executive, legislative and judicial departments of the State; all other appropriations shall be made by separate bills, each embracing but one subject."

Section 12, art. 16: "No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation."

From 1875 to 1933, the Legislature made appropriations for these salaries to be paid out of general revenue. These appropriations were set forth with the provisions

for the judicial branch of the Government. In 1933 the salaries provided by the Constitution for prosecuting attorneys were not appropriated. The usual appropriation for this purpose was resumed in 1935.

The Legislature in 1931 appropriated large sums in biennial, supplemental and deficiency measures. In the next two years deficits occurred in the revenues. Taxes were not paid or the tax sources fell off, as is known to all. Before the passage of appropriation bills in 1933, act 4 of January 27 was adopted. It provides that "no State officers, bureau, commission, department or institution, *excepting only the constitutional officers and the courts,* shall function or operate unless there has been a prior appropriation by the General Assembly to pay the expenses of such operation."* The Comptroller is to keep advised at all times as to the actual revenues and probable receipts, and report to the Governor, who shall have authority to reduce any and all appropriations, *"constitutional allowances"* excepted. Act 5 was adopted January 27, 1933. It provides that on and after July 1, 1933, 20 per cent. of all moneys accruing to the general revenue fund from all sources shall be placed in a sinking fund for the purpose of retiring obligations of the State payable from the general revenue fund and outstanding against that fund on January 10, 1933; that from and after the passage of the act all unexpended balances and all accruals to the general revenue fund are impounded, and all thereof, except the portion going into the sinking fund, are set apart for the payment of current expenses of the various departments of the Government, to the end that the State may operate on a cash basis and within the limits of its income and pay its outstanding obligations; that after the passage of the act no more than 80 per cent. of the unexpended balance as of January 10, 1933, of the appropriation for any institution, department, or agency for the biennial period ending June 30, 1933, shall be drawn, with this proviso: "* * * The provisions hereof shall not apply to or affect the salary of any officer where such salary is fixed by

*Acts 1933, p. 1181.

the Constitution and the amount payable on such salary shall be deducted from the appropriation before the percentages herein provided for are computed.''

It will be seen that this act does not impound or appropriate for the sinking fund any part of the general fund necessary to pay salaries fixed by the Constitution.

Act 230, adopted March 28, 1933, creates a Commission composed of three State officers to adjust claims filed with the Comptroller prior to March 9, 1933, and appropriates sums from various funds for such purposes, including $70,000 from the general revenue fund, *''subject to the terms of act 5 of the Acts of 1933 or any subsequent amendments thereto.''* The Commissioners, after allowing claims, may allow vouchers therefor, for which the Auditor may issue warrants to be paid from the general revenue sinking fund.

It is seen from the foregoing that constitutional salaries, that is salaries of constitutional officers, and the fund from which payment would be made, are not included in, but are excepted from, the operation of these statutes.

Act 227 was adopted March 27, 1935. It provides a claims commission ''for the period terminating with the convening of the 51st General Assembly.'' The Commission is to audit, adjust and allow all claims presented in the form of bills in either branch of the 50th General Assembly, and all filed with the State Comptroller prior to the effective date of the act. Sums for payment of claims so allowed are appropriated from various funds, including $93,165.40 from the general revenue fund, and as to such claims as are so audited. ''Warrants issued in payment of claims against the general revenue fund shall be payable from the general revenue sinking fund in sequence of dating, but shall not have priority over general revenue sinking fund warrants and vouchers executed prior to 1933, or claims allowed by the special claims committee established under the provisions of act 230 of 1933.''

We hold that acts 5 and 230 of 1933 and act 227 of 1935 are to be construed together, and there is no repeal of the provision in act 230 and in act 5, excepting from

the jurisdiction of this Commission the matter of salaries of constitutional officers, and, therefore, the provisos making the exception, are to be read as a part of all the law on the subject; that the payment of salaries of prosecuting attorneys is not intended to be deferred to any such sequence as is set up in the later act. The salaries are payable out of the general revenue fund, or out of so much of that fund as may have been specially appropriated by act 227 to this purpose, but without deference in sequence to other claims. If the prosecuting attorneys have accepted warrants on their face payable only under the terms of act 227 of 1935, they are not bound thereby to submit to the terms of the act, but are constitutionally entitled to be paid without the limits of such act.

"Public Officers' compensation is fixed by law and no contract or agreement made to receive less or more is binding. *Mechem on Public Officers*, page 249." *Pulaski County* v. *Caple et al.*, 191 Ark. 340, 86 S. W. (2d) 4. To the same effect see *Duncan* v. *Scott County*, 68 Ark. 276, 57 S. W. 934; *Cobb* v. *Scoggin*, 85 Ark. 106, 107 S. W. 188; *Glavey* v. *U. S.*, 182 U. S. 595, 45 L. ed. 1247, 21 S. Ct. 891.

"The acceptance of less compensation than that established by law for the office does not estop an officer from subsequently claiming the legal compensation." 46 C. J. 1027, Officers, § 275.

"As a general rule, an agreement by a public officer to render the services required of him for less than the compensation provided by law is void, as against public policy." 22 R. C. L. 538, Public Officers, § 235.

The rule seems to be well settled in most jurisdictions that a contract whereby a public officer agrees to perform services required of him by law for a less compensation than that fixed by law is contrary to public policy and void. *Werner* v. *Hillman Coal & Coke Co.*, 300 Pa. 256, 150 Atl. 471, 70 A. L. R. 967, Annotation 973.

In contending that these unpaid salaries may not be paid in the absence of specific legislative appropriation, appellant relies upon the provisions of § 29, art. 5 of the Constitution. We do not construe that section as

applying to the payment of the salaries of constitutional officers. It controls payments from the Treasury of matters not covered by constitutional appropriation. In the case of *Dickinson* v. *Edmondson,* 120 Ark. 80, 178 S. W. 930, the taxpayer sought to restrain the Auditor and Treasurer in disbursing common school funds on the ground that there was no legislative appropriation for such purposes. This court held that § 29, art. 5, did not control; that the Constitution appropriates the fund continuously, and no specific legislative appropriation is required for its expenditure. In other States and over a long period, constitutional provisions similar to § 29, art. 5, have been construed so as not to conflict with other constitutional provisions, and, therefore, as not to defeat the purpose of a Constitution, which is to establish a Government of three coordinate branches, all of which must operate through officers who must be paid their salaries as fixed, regardless of whether or not the Legislature specifically appropriates therefor. There are many well-considered cases on this subject. The principles set forth are a part of the body of constitutional law. Among the reasons for their adoption are these: The kind of Government the people adopted contains three coordinate branches. In assigning the Government to three different departments the people intended to secure to each its independency of action and to insure this they have provided for the officers of each to be paid for their services and inhibited the Legislature from diminishing the pay during the term of office. The Government can be carried on only through the instrumentality of individuals and their services can be obtained only by being paid for. No coordinate branch of the Government may stop its machinery by refusing to pay the salaries of those upon whom is devolved the discharge of the duties of other branches. The Constitution expressly declares they shall receive their salaries, and they shall not be diminished during the term of office. (Section 11, art. 19, Const., Ark. 1874.) The object of the people in establishing a constitutional Government would be defeated if one coordinate department could destroy another, or any function of the other, by denying

pay to its officers. An appropriation is made *by law* in a Constitution which establishes the office, says that the officer shall be paid, and that his pay shall not be diminished in the term of office.

In Oklahoma the salary of Supreme Court Judges is fixed by the Legislature, the Constitution providing that there shall be no change during the term of office, and also containing a provision similar to § 29, art. 5 of our Constitution. The Legislature failed to appropriate the full amount of the justices' salaries in 1933, reducing the monthly installment. A special Supreme Court held that the full amount should be paid; that the Constitution for that purpose of its own provisions operated as a continuing appropriation. *Riley* v. *Carter*, 165 Okla. 262, 25 Pac. (2d) 666; 88 A. L. R. 1018. This opinion reviews and adopts the principles of a leading case, *Thomas* v. *Owens*, 4 Md. 189, and discusses other sound opinions on the subject, and observes that it is not to be held that the people intended that the Legislature should have power to create a condition whereby only those who possess sufficient wealth to forego the payment of salaries shall administer the affairs of State.

On this point it is said by the Alabama Supreme Court, in holding void an attempt to prorate the constitutional salaries, "salaries are paid to public officials not so much as an equivalent for services performed, as for the purpose of enabling them, while in office and in the performance of public duties, to be relieved of the necessity of constant watchfulness for the necessities and comforts of life." A headnote of that case is: "Legislature cannot compel, by proration, where revenues are insufficient, reduction of salaries of constitutional and statutory officers." *Abramson* v. *Hard,* 229 Ala. 2, 155 So. 590. Controlling cases cited by appellees are *State ex rel. Rotwitt* v. *Hickman,* 9 Mont. 370, 23 Pac. 740, 8 L. R. A. 403; *Grimball* v. *Beattie, Comptroller General,* 174 S. C. 422, 177 S. E. 668; *Windes* v. *Frohmiller,* 38 Ariz. 557, 3 Pac. (2d) 275.

Section 29, art. 5 places a time limit upon legislative appropriations. This does not apply to constitutional

appropriations, which are continuing, even though the amount is fixed by statute. 59 C. J. 259.

Section 30, art. 5 provides that the general appropriations bill shall embrace nothing but appropriations for the ordinary expense of the executive, legislative and judicial departments of the State. If that provision of the Constitution is a mandate for the Legislature always to adopt such a general appropriations bill, it is not in the nature of things self-executing so far as the Legislature is concerned, but the Constitution self-executes it.

We affirm the judgment of the chancery court in sustaining the demurrer and dismissing the complaint. No petition for a mandatory injunction is before the court, and, therefore, none may be awarded. The judgment is reversed, and modified as to that. It is to be assumed that the officers of State will follow the law as herein stated.