Jim MAGNUS *v.* Valerie CARR

02-604                                        86 S.W.3d 867

Supreme Court of Arkansas
Opinion delivered October 24, 2002

*Pender, McCastlain & Ptak, P.A.*, by: *James R. Pender; Mark Pryor*, Att'y Gen., by: *Wendy L. Kelly*, Ass't Att'y Gen.; and *Quattlebaum, Grooms, Tull & Burrow, PLLC*, by: *Leon Holmes*, for appellant.

*Robin J. Carroll*; and *Robert L. Hertzfeld, Jr.*, for appellee.

R AY THORNTON, Justice. Appellant Jim Magnus appeals from the circuit court's decision to enjoin him from exercising the powers of a member of the Arkansas House of Representatives, namely, voting in legislative matters. He argues that the circuit court has effectively ousted him from office and had no authority to do so. Appellee Valerie Carr responds that the circuit court did not expel Mr. Magnus from his position, and that Mr. Magnus abandoned his office. We hold that under the particular facts of this case, the circuit court had no authority to enjoin Mr. Magnus's vote and, thus, we reverse and dismiss.

Mr. Magnus was first elected to the Arkansas House of Representatives from House district 55 in 1996 and was re-elected in 1998 and in 2000. In October of 2001, he moved his residence from House district 55 to a location in district 53, also in Little Rock.

On December 6, 2001, Valerie Carr, a resident of House district 55, filed a complaint with the State Claims Commission asking the Commission to recommend that Mr. Magnus be expelled from the House of Representatives. On March 1, 2002, there was a hearing, and the Claims Commission subsequently filed a recommendation that Mr. Magnus be allowed to keep his seat, stating that the Commission did not have jurisdiction to hear the complaint.

On June 7, 2002, Governor Huckabee called for an extraordinary session of the 83rd General Assembly to begin on

June 10, 2002. On June 11, 2002, Carr filed a petition for writ of *quo warranto* and for temporary restraining order against Mr. Magnus in the Pulaski County Circuit Court. The same day, the trial court entered an order granting a temporary restraining order, which was later made permanent, prohibiting Mr. Magnus from exercising the powers of his office, including casting votes on measures considered in the extraordinary session. The petition was filed that day, and no evidence was received. It was not controverted that Mr. Magnus no longer lived in House district 55. On that basis, the trial court ruled that Mr. Magnus had abandoned his office and was not a member of the Legislature eligible for a stay under Arkansas Rule of Civil Procedure 40.

On June 12, 2002, Mr. Magnus filed a notice of appeal and petitioned this court for a writ of *certiorari*, in the alternative a writ of prohibition, or in the alternative for temporary relief staying the circuit court order and for expedited consideration. This court denied the motion for stay and granted the motion for expedited consideration of the instant appeal.

Appellant presents for his first point on appeal that the circuit court has no jurisdiction to determine the qualifications of a member of the House of Representatives and to expel that member from office. In response, appellee asserts that the trial court did not expel Mr. Magnus from the House of Representatives. Appellee argues that the trial court found that he had abandoned his office and should be restrained from voting on measures under consideration during the special legislative session because, as a non-member of the House, his vote, if it should be determinative of the passage or failure of legislation, could not be counted as a valid vote.

Before turning to the first point raised by appellant, we must first review the constitutional framework separating and defining the branches of government.

Article 4, sections 1 and 2, of the Arkansas Constitution states the principle of separation of powers between the three branches of government:

> The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be con-

fided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.

\*     \*     \*

No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

*Id.* This court has addressed the importance of the doctrine of separation of powers in the past:

The kind of government the people adopted contains three co-ordinate branches. In assigning the government to three different departments, the people intended to secure to each its independency of action . . .

*Smith v. Page,* 192 Ark. 342, 91 S.W. 2d 281 (1936).

■ Article 5, section 11, of the Arkansas Constitution elaborates on the application of the separation of powers doctrine and plainly states that "[e]ach House shall appoint its own officers, and shall be sole judge of the qualifications, returns and elections of its own members." *Id.*

■ Our case law has clearly stated how the Arkansas Constitution shall be construed:

When construing a provision of the Arkansas Constitution, we have said that when the language of the provision is plain and unambiguous, each word must be given its obvious and common meaning, and neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision.

*Chapman v. Bevilacqua,* 344 Ark. 262, 42 S.W.3d 378 (2001); *Hoyle v. Faucher,* 334 Ark. 529, 975 S.W.2d 843 (1998).

■ We have held that the House of Representatives determines the qualifications of its members, and that the courts have no authority to decide such matters except in the limited circumstances where the validity of legislation is challenged as in *Matthews v. Bailey,* 198 Ark. 830, 131 S.W.2d (1939). This court has

repeatedly held that the judiciary has no jurisdiction over the expulsion of members of the General Assembly. *Reaves v. Jones*, 257 Ark. 210, 515 S.W.2d 201 (1974); *Irby v. Barrett*, 204 Ark. 682, 163 S.W.2d 512 (1942); *Evans v. Wheatley*, 197 Ark. 997, 125 S.W.2d 101 (1939). In *Reaves v. Jones, supra*, this court held that the judiciary lacks jurisdiction to determine the qualifications of the members of the Senate. *Id.*

■ In *Matthews, supra*, this court exercised its power and authority to determine the validity of legislation that was challenged on the basis that an insufficient number of senators had voted to pass it. We invalidated legislation affecting the substantive rights of a bond-holder, Roy Matthews, who brought the action contesting the validity of an emergency clause that had been passed only if the vote of Paul Gutenson, were counted. Gutenson had been appointed by the governor to fill a Senate vacancy notwithstanding that there was no authority for the governor to make such an appointment. We held that when an officer of the General Assembly is not a true officer of the Senate, the court can determine that the vote of said officer should not be counted if the court is forced to make a choice between two constitutional provisions. *Id.*

We denied appellant's motion for stay because the issue required briefing and argument on whether this case was controlled by our decision in *Matthews, supra* and whether a writ of *quo warranto* was cognizable. We first conclude that *Matthews* does not control the disposition of this case. We limited our opinion in *Matthews* to a consideration of the effect upon the passage of legislation when the deciding vote was cast by a stranger to the legislative body.

■ Writing for a unanimous court in *Pendergrass v. Shied*, 241 Ark. 908, 411 S.W.2d 5 (1967), Justice George Rose Smith carefully explained this limitation:

> We have repeatedly held, directly or by implication, that the judicial branch of the State government is without jurisdiction of election contests involving seats in the General Assembly. There is nothing contrary to those decisions in *Matthews v. Bailey* cited by appellant. That case merely held that the vote of a person

appointed to the State Senate by the governor, contrary to the express language of Amendment 29, could not be counted. There the court was compelled to make a choice between two constitutional provisions, either of which might have been controlling. That is not the situation here.

*Id.* (Citations omitted.)

■■ The circumstances of this case do not relate to a challenge to the validity of any legislation adopted by the General Assembly, as all such legislation adopted during the extraordinary session was passed by a comfortable margin, and no piece of legislation depended upon Mr. Magnus's vote to be adopted. In *Matthews*, the challenge to the validity of the legislation was made following the legislative session, after legislation had been passed by one disputed vote. We now conclude that our limited review under *Matthews*, *supra* concerns only a challenge to the validity of legislation adopted by counting the vote of a stranger to the legislative body. Based upon our holding in *Matthews*, *supra*, we should sustain a challenge to the validity of legislation only when it is shown that such legislation was passed by counting the vote of a stranger to the legislative body. We hold that the circuit court lacked jurisdiction to enjoin the casting of a vote by Mr. Magnus, notwithstanding that, under *Matthews*, such a vote, if both decisive and defective, might affect the validity of a contested enactment.

Next, we address appellant's second point which is whether Ms. Carr has standing to bring a petition for writ of *quo warranto*. Arkansas Code Annotated § 16-118-105 states in pertinent part:

> (b)(1) Whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise.
>
> (2) A person who continues to exercise an office after having committed an act, or omitted to do an act, of which the commission or omission by law, created a forfeiture of his office, shall be subject to be proceeded against for a usurpation thereof.
>
> (3)(B) For usurpation of other than county offices or franchises, the action by the state shall be instituted and prosecuted by the Attorney General.

*Id.*

Appellee cites *State of Nevada, ex rel. v. McMillan*, 58 P. 284 (Nev. 1899), wherein that state's court held that a proceeding in *quo warranto* may be in the name of the state, without the attorney general, and upon the relation of a private citizen, or upon the relation of one claiming the office in question, upon the leave of the court. That is not the law of Arkansas. Instead, we rely on the plain language of Ark. Code Ann. § 16-118-105(b)(3)(B), which states: "For usurpation of other than county offices or franchises, the action by the state shall be instituted and prosecuted by the Attorney General." *Id.*

██ In *Moody v. Lowrimore*, 74 Ark. 421, 86 S.W. 400 (1905) we held that in the instance of a writ of *quo warranto*, "this remedy must be prosecuted by the state, or some public officer representing the sovereignty. In this state, the officer authorized by law to act for the state when the assertion of this prerogative of the sovereignty of the state is the Attorney General." More recently, we held, "it is the State who initiates *quo warranto*." *Cummings v. Washington County Election Comm'n*, 291 Ark. 354, 724 S.W.2d 486 (1987).

██ We hold that Ms. Carr was not the proper party to bring a writ of *quo warranto*. For that reason we do not address appellant's point on appeal concerning the residency requirements imposed on members of the House by the Arkansas Constitution. Nor do we reach the issue of whether Mr. Magnus had abandoned his office as a member of the Legislature. Accordingly, we do not reach the question of the applicability of Rule 40 to this proceeding.

We reverse and dismiss.

GLAZE, CORBIN, and IMBER, JJ., concur.

DONALD L. CORBIN, Justice, concurring. I agree with the majority that both the trial court and this court are without jurisdiction under the facts of this case to review Appellant Jim Magnus's qualifications as a legislator. Pursuant to Article 5, § 11, of the Arkansas Constitution, the issue whether Magnus is required to reside in the district from where he was elected is a

matter to be determined exclusively by the House of Representatives. Therefore, I agree with the majority that the trial court erred in restraining Magnus from voting or otherwise participating in any legislative session that may be called during the remainder of his term. I write separately, however, because I believe that the majority has exceeded the scope of its authority in this case by ruling on the issue of Appellee Valerie Carr's standing to bring a petition for writ of *quo warranto*.

Throughout its long and storied history, this court has steadfastly refused to issue advisory opinions or answer purely academic questions. *See, e.g., Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001); *Benton v. Bradley*, 344 Ark. 24, 37 S.W.3d 640 (2001); *Villines v. Harris*, 340 Ark. 319, 11 S.W.3d 516 (2000); *Stilley v. McBride*, 332 Ark. 306, 965 S.W.2d 125 (1998); *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 954 S.W.2d 221 (1997); *Almond v. Cigna Prop. & Cas. Ins. Co.*, 322 Ark. 268, 908 S.W.2d 93 (1995); *Smedley v. Smedley*, 319 Ark. 421, 892 S.W.2d 273 (1995); *Dougan v. Gray*, 318 Ark. 6, 884 S.W.2d 239 (1994); *McCuen v. McGee*, 315 Ark. 561, 868 S.W.2d 503 (1994); *Johnson v. State*, 314 Ark. 471, 863 S.W.2d 305 (1993); *Jenkins v. Goldsby*, 307 Ark. 558, 822 S.W.2d 842 (1992); *City of Springdale v. Jones*, 295 Ark. 129, 747 S.W.2d 98 (1988); *Long v. Henderson*, 249 Ark. 367, 459 S.W.2d 542 (1970); *Catlett v. Republican Party of Arkansas*, 242 Ark. 283, 413 S.W.2d 651 (1967); *Countz v. Roe*, 231 Ark. 108, 328 S.W.2d 353 (1959); *Hogan v. Bright*, 214 Ark. 691, 218 S.W.2d 80 (1949); *Barbee v. Kolb*, 207 Ark. 227, 179 S.W.2d 701 (1944). It escapes me why the majority has chosen to disregard the foregoing precedents in this case.

Clearly, if this court is without jurisdiction over the *subject matter* of this case, any opinion that it renders on the appropriateness of the *method* used to institute this case is an advisory opinion and amounts to nothing more than *obiter dictum*. This court has recently observed that it is not bound by any conclusion stated as *obiter dictum*. *See Green v. State*, 343 Ark. 244, 33 S.W.3d 485 (2000); *Burnette v. Perkins & Assocs.*, 343 Ark. 237, 33 S.W.3d 145 (2000). Thus, any conclusion regarding Appellee's standing to

seek a writ of *quo warranto* will have no precedential value whatsoever and will be a vain and futile act.

Furthermore, I disagree with the majority's view that the issue of Magnus's alleged abandonment of his office, *i.e.*, by moving into a nearby district, is separate and distinct from the issue of his qualifications to serve as a legislator. In my view, the trial court relied on the theory of abandonment to affect an end-run around the constitution's plain mandate that the judicial branch has no power to judge the qualifications of a member of the General Assembly. However, the facts of this case do not support such a theory. This is not a situation where, for example, a legislator has fled the state or the country, such that he or she might be said to have affirmatively abandoned his or her office.

Rather, the facts here merely show that Magnus initially resided in House District 55, which is situated in Little Rock, and was elected as that district's representative in November 2000. In October 2001, about midway through his term, he moved into a nearby district, House District 53, which is also situated in Little Rock. The only issue that arises from these facts is whether Magnus's move resulted in his disqualification to hold the position of House Representative of District 55. Abandonment simply does not enter into it.

In sum, the only issue at stake in this case is whether Magnus is qualified to serve in his current legislative position. The constitution has placed exclusive jurisdiction of this issue in the legislative branch of our state government. Accordingly, I concur in the judgment reached by the majority, but I must depart from that part of the opinion purporting to decide that Appellee lacks standing to bring a petition for a writ of *quo warranto*. In the words of Justice McFaddin: "With the question of jurisdiction settled — and that is always a primary question — all other questions in this appeal become mere *obiter dicta*, and because such matters are *dicta*, I am concurring in the result and foregoing the *dicta*." *Albright v. Karston*, 206 Ark. 307, 318, 176 S.W.2d 421, 426 (1943) (McFaddin, J., concurring).

GLAZE and IMBER, JJ., join in this concurrence.