The Honorable Jim Wood Auditor of State 230 State Capitol Little Rock, Arkansas 72201
Dear Mr. Wood:
I am writing in response to Chief Deputy Auditor Larry E. Crane's request for an opinion on the following:
 This office has received several informal requests by a Constitutional Officer and several members of the General Assembly to determine if, under Arkansas law, elected legislators and officers may decline the increases in salary recently approved by the General Assembly for their respective offices. Please consider this our request for your formal opinion on whether an elected Constitutional or legislative office-holder may decline part or all of the salary otherwise approved for payment by Arkansas law.
RESPONSE
In my opinion, the answer to this question is "no," based upon Arkansas's apparent adherence to the majority rule that when the salary of a public officer is fixed by law, the officer cannot waive such compensation because such waiver is contrary to public policy.
The Arkansas Supreme Court has never directly addressed the question of whether an officer may voluntarily decline part or all of his or her established salary, but it has recognized the general rule that "Public Officers' compensation is fixed by *Page 2 
law and no contract or agreement made to receive less or more is binding." Pulaski County v. Caple, 191 Ark. 340, 347, 86 S.W.2d 4 (1935) and Smith v. Page, 192 Ark. 342, 347 (1936). Page involved the non-appropriation of the full constitutionally-established salaries for prosecuting attorneys in 1933, the issue being whether a legislative appropriation was required before the salaries could be paid.Id. at 343. The court held that the salaries required no appropriation because Ark. Const. art. 19, § 11 constitutes a self-executing appropriation of these sums. Id . In so ruling, the court observed:
 If the prosecuting attorneys have accepted warrants on their face payable only under the terms of act 227 of 1935, they are not bound thereby to submit to the terms of the act, but are constitutionally entitled to be paid without the limits of such act.
 `Public Officers' compensation is fixed by law and no contract or agreement made to receive less or more is binding. Mecham on Public Officers, page 249.' [Citations omitted.]
 `The acceptance of less compensation than that established by law for the office does not estop an officer from subsequently claiming the legal compensation.' 46 C.J 1027, Officers.
 `As a general rule, an agreement by a public officer to render the services required of him for less than the compensation provided by law is void, as against public policy.' 22 R.C.L. 538, Public Officers, 235.
Id. at 347.
A reference to current treatises confirms the continued validity of these observations. 67 C.J.S. Officers § 310 (2002) at 539. ("As a general rule, where the compensation of a public officer is established by law, he or she cannot accept less.") 63C Am. Jur. 2d Public Officersand Employees § 296 (1997) at 737. ("The courts, with some exceptions,[13]. declare invalid as against public policy a contract or agreement by a public officer to render services for a different compensation than that provided by law, [footnote omitted] as, for example, where the stipulated compensation is less than that provided for by law. [Footnote *Page 3 
omitted.] Agreements of this character have been held invalid where made by a public officer with another officer or public body. [Footnote omitted.]").[1]
The general rule that a public officer cannot agree to accept any compensation less than that fixed by law is grounded primarily on the principle that public office, and compensation therefore, is not a matter of contract. As stated in Gentry v. Harrison, 194 Ark. 916, 925,110 S.W.2d 497 (1937): "The salary [of an elected or appointed public official] is fixed by law and not by contract." See also Fennell andReeves v. School District No. 13, 208 Ark. 620, 624, 187 S.W.2d 187
(1945) (refusing to apply the principles of accord and satisfaction or estoppel so as to deny teachers' claim for additional compensation above the amounts they accepted each month, observing that the salaries in question "did not arise by virtue of a contract, but by operation of law.") The policy reasons behind the rule were recognized by the court in Page, supra, wherein it quoted the Alabama Supreme Court's statement that "salaries are paid to public officials not so much as an equivalent for services performed, as for the purpose of enabling them, while in office and in the performance of public duties, to be relieved of the necessity of constant watchfulness for the necessities and comforts of life." 192 Ark. at 349 (quoting Abramson v. Hard, 229 Ala. 2,155 So. 590 (1934)). Another court similarly observed:
 The reasons for the rule are obvious. Where the compensation for an office has been fixed by law, it would be detrimental to the public service if the office could be let out to the lowest bidder. Laws designed to attract competent persons to public office by providing them with adequate compensation could be set at naught at the caprice of those charged with their administration. The effects on the efficiency and morale of the public service, if this were permitted, are not difficult to imagine.
Allen v. Lawrence, 318 Mass. 210, 213-14, 61 N.E.2d 133 (1945).
The Georgia Attorney General aptly summarized the law concerning public officers' salaries as follows: *Page 4 
There is a distinct difference in the salary of a public official and the salary of an ordinary employee. The salary of a public official does not arise from a contractual relationship between the public official and the state or political subdivision. This is distinctly different from the ordinary employer-employee relationship which is based on an express or implied contract. The public official's salary is a part of his office and attaches to the person holding the office. As the Court of Appeals stated in Owens v. Floyd County, 96 Ga. App. 25, 28 (1957):
 `It has been repeatedly held by the courts that `an officer's right to his compensation does not grow out of a contract between him and the State or the municipality by which it is payable. The compensation belongs to the office, and is an incident of his office, and he is entitled to it, not by force of any contract, but because the law attaches it to the office.' [Citation omitted.]
 Thus, the salary of a public official becomes a matter of public interest and a matter of public policy. Since the salary is not based on contract, the public official is not at liberty to modify or to waive the salary. `An agreement by a public officer to accept less than the fees or salary allowed him by law is contrary to public policy and void, and the same is true of a promise to give a public officer more than the amount which the law fixes as compensation for his services.' [Citations omitted.]
Ga. Op. Att'y Gen. No. 85-13 (1985 WL 68867 (Ga. AG) (emphasis added)).
The few Arkansas cases, noted above, appear to accord with the weight of authority to the effect that a public officer cannot accept less than the salary that has been established for the office. It should be noted that there are cases to the contrary, at least in so far as the right of the officer to claim the difference in salary is concerned. E.g.,Schwarz v. City of Philadelphia, 337 Pa. 500, 12 A.2d 294 (1940) (holding that a coroner could not recover portions of his salary which had been deducted as part of a voluntary effort to economize government during *Page 5 
the Depression); State, ex re. Hess v. City of Akron, 132 Ohio St. 305,7 N.E.2d 411 (1937) (deputy bailiff held to have waived his right to recover the unpaid balance of his statutory salary by signing the payroll and accepting without protest the lesser amount.) See also 63C Am. Jur. 2d Public Officers and Employees § 436 (1997) at 871 (noting that some courts have adopted the theory that "there has been a voluntary gift or donation of a public or charitable nature, precluding recovery by the officer or employee.") However, these cases appear to be in the minority.
I believe it also bears noting that even assuming our court subscribes to the theory that a public officer may voluntarily relinquish part of his or her fixed salary, no authority exists for the payment of a lesser amount than the salaries in question, which were recently established under Act 3 of 2009, to be effective July 1, 2009. See Acts 2009, No. 3, § 11 (emergency clause). Act 3 is the general appropriation act for the ordinary expenses of the executive, judicial and legislative branches of the state for the 2009-2010 fiscal year. In pertinent part, it appropriates to the Auditor of State, to be payable from the Constitutional Officers' Fund, salary amounts for members of the Executive Department and General Assembly, Prosecuting Attorneys, and the State Justices and Judges. Id. at § 1. The General Assembly sets these salaries pursuant to the Arkansas Constitution. Ark. Const. amend.70, § 3; amend. 21, § 2; amend. 80, § 16(E). Act 3 makes the Auditor of State the disbursing officer for the funds appropriated under the act.Id. at § 4. In this regard, although it is denominated an "appropriation act," Act 3 is unlike other appropriation acts because it is not simply an authorization to use funds for the specified salaries. See Jobe v.Caldwell, 93 Ark. 503, 513, 125 S.W. 423 (1910) (defining an "appropriation."); see also Dickinson v. Clibourn, 125 Ark. 101,187 S.W. 909 (1916). Indeed, we know from Smith v. Page, supra, that no appropriation is required for these salaries because they were established pursuant to the constitution, which itself constitutes an appropriation of the funds. See 192 Ark. at 349. See also Dickinson,State Auditor, v. Edmondson, 120 Ark. 80, 178 S.W. 930 (1915) (Ark. Const. art. 5, § 29, the "specific appropriation" requirement, does not apply to require appropriation of the common school fund which is covered by a separate constitutional provision (art. 14)). Act 3 instead effectively requires the Auditor to draw warrants for the officers' salaries as fixed by the act. See A.C.A. § 25-16-516 (Repl. 2002) ("[I]n all cases of grants, salaries, and expenses allowed by law, the Auditor of State shall draw warrants upon the State Treasury for the amount due, in the following form. . . ."); Cotham v. Coffman, State Auditor,111 Ark. 108, 163 S.W. 1183 (1914) (quoting an identical *Page 6 
predecessor to A.C.A. § 25-16-516 and stating that "mandamus will lie to compel an auditor to draw a warrant for an officer's salary." (Citations omitted.))
According to my review, therefore, the Auditor performs essentially a non-discretionary duty in the payroll process with respect to these constitutionally-established salaries. There is no procedure under which the Auditor, or any other official, might determine the amount to be requisitioned. Because neither the Auditor nor any other official is authorized to alter the established salaries, I believe it is immaterial whether or not a waiver of these salary increases would otherwise be considered contrary to public policy. This distinguishes your question from one addressed by the Ohio Attorney General concerning the compensation of county officials. Ohio Op. Att'y Gen. No. 2003-027. Similar to the issue at hand, the question in that opinion involved a request by county officials to receive less than their statutorily-prescribed compensation. The Attorney General first reviewed the relevant statutes governing payment of the compensation and the county auditor's duties relating to the payments. This review revealed that orders or vouchers are presented to the auditor for payment of the compensation, and that the auditor is generally required to issue a warrant on the county treasury for that amount. Id. The Attorney General therefore concluded that when a voucher sets forth an amount of compensation that is less than what the county official is entitled to receive, the auditor is authorized to pay the lesser amount.Id. He then opined, based upon City of Akron, supra, that an elected county official is permitted to voluntarily waive a portion of the compensation he is statutorily entitled to receive.[2]
As explained above, a very different case is presented with respect to the constitutional officers salaries under Act 3 of 2009. There is no procedure to support paying the salaries of these constitutional officers in any amounts other than those fixed by Act 3. No vouchers are presented to the Auditor for the disbursement of these funds.Compare A.C.A. § 19-4-1103 (Repl. 2007) (regarding responsibility of executive agency heads in connection with vouchers for the proposed disbursement of state funds). Accordingly, no procedure exists for requisitioning a different amount.
In sum, therefore, it is my opinion that the officials may not decline these recent salary increases. After they receive their salaries, the officials may of course *Page 7 
dispose of them as they wish. If, for instance, an officer wishes to return all or a portion of his or her salary to the state treasury, I see nothing to prevent such a donation.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Footnote 13 of this excerpt notes a Kentucky case, Hodges v.Daviess County, 285 Ky. 508, 148 S.W.2d 697 (1941), which held the general rule inapplicable to deputies who hold office at the pleasure of the appointing authority and who may be removed at any time.
[2] As indicated above, the Ohio Supreme Court in City of Akron
determined that such a waiver is not contrary to public policy.132 Ohio St. at 308. *Page 1