The Honorable Donna Hutchinson State Representative
24 Rillington Drive Bella Vista, Arkansas 72714-3204
Dear Representative Hutchinson:
This is my opinion on your questions about inter-agency loans.
Act 1034 of 1991, as amended byAct 1357 of 1995 (collectively "Act 1034"), authorized the Arkansas Teacher Retirement System (ATRS) to loan the Arkansas Department of Education (ADE), "from the Teacher Retirement Trust Fund, sufficient funds not to exceed twenty-five million dollars ($25,000,000) for a state-wide computer system capable of linking all public school systems and the [ADE]." Act 1357 of 1995, § 1. Act 1034 specified an interest rate and repayment start date but stated that the loan otherwise "shall be under the terms as agreed upon by the Board of Trustees of [ATRS] and the State Board of Education."Id.
Your request says that "[r]epayment of [the] loan has been ongoing" and refers to Act 1442 of 2009, which designated loan repayment of $5,800,586 as a top-tier use of the General Improvement Fund. Act 1442 of 2009, § 3(a)(3), (d); see alsoAct 510 of 2009, § 1, and Act 257 of 2010, § 6 (appropriating and reappropriating, respectively, the same amount from the General Improvement Fund for loan repayment).
Your questions are:
 1. Is it permissible under the Arkansas Constitution for one agency to issue a loan to another as authorized by Act 1034 of 1991? *Page 2 
 2. Does a loan such as that authorized by Act 1034 of 1991 obligate the General Assembly to appropriate funds in the future to satisfy an agency's obligations under the loan? Is it within the General Assembly's power to decline to appropriate the funds necessary to satisfy the loan obligation?
 3. When appropriating funds addressed to the loan obligation, does it matter what type of funds are appropriated for that purpose? As noted earlier, general improvement funds have recently been used for that purpose. Is the use of general improvement funds appropriate?
RESPONSE
I am unable to answer your first question or the first part of your second question for reasons explained below. In my opinion, it is normally within the General Assembly's legislative power to decline to appropriate funds for any purpose, but legislators should be aware of a constitutional provision that requires the General Assembly to provide for payment of the state's just and legal debts. It is also my opinion that only certain moneys, including amounts in the General Improvement Fund, may be appropriated for loan repayment.
Question 1 — Is it permissible under the ArkansasConstitution for one agency to issue a loan to another as authorizedby Act 1034 of 1991?[1]
This question's breadth makes impossible a definitive answer in general. The word "agency" might denote any of a variety of bodies in or associated with any branch of state government or — in the case of constitutionally-created agencies — not unequivocally part of any branch at all. "Agencies" are formed under and governed by different laws, and have different structures, purposes, and powers. Their money arises from different sources, is held in different ways, and goes to *Page 3 
different uses. Accordingly, the action you question might or might not violate one or more of several constitutional provisions that could apply in a particular case, depending on all the relevant facts and circumstances.
To the extent your question seeks my opinion about the ADE/ATRS loan, rather than merely using it to illustrate the kind of loan you ask about generally, I am again unable to opine. The legality of any transaction will depend on all the relevant facts and circumstances. Act 1034 left it to the parties to agree on almost all the loan's terms. I have no documents or other evidence of the parties' agreement. Thus I am not aware of all the material facts. This office has often stated that it is not equipped to investigate and evaluate questions of fact in most cases. See, e.g., Op. Att'y Gen. 2007-254, 2006-109, 2004-115.
Question 2 — Does a loan such as that authorized byAct 1034 of 1991 obligate the General Assembly to appropriate funds inthe future to satisfy an agency's obligations under the loan? Is itwithin the General Assembly's power to decline to appropriate thefunds necessary to satisfy the loan obligation?
Act 1034 itself does not purport to obligate the General Assembly to appropriate funds for loan repayment. Not being informed of all the material facts, I am unable to opine whether the ADE/ATRS loan in particular purports to obligate the General Assembly to appropriate repayments. Similarly, in general, because I am unaware of most of the material terms of the ADE/ATRS loan, I cannot profitably speculate about which other loans are similar to ("such as") it or about how the law may apply to them.
I can say that, in my opinion, it is generally within the legislature's power to decline to appropriate funds. And the General Assembly may not, in any event, appropriate for periods in excess of one fiscal year. "The legislative power of the people of this State shall be vested in a General Assembly. . . ." Ark. Const. art. 5, § 1. "The power of the General Assembly with respect to the public funds raised by general taxation, is supreme. . . ." Dickinson, State Auditor v. Edmondson,120 Ark. 80, 85, 178 S.W. 930 (1915). "No money shall be drawn from the treasury except in pursuance of specific appropriation made by law . . . and no appropriations made by the General Assembly . . . shall be for a longer period than one (1) fiscal year." Ark. Const. art. 5, § 29. Far from affirmatively requiring the legislature to appropriate funds in particular cases, the first part of this *Page 4 
constitutional provision prohibits the expenditure of any money without an appropriation. The second part prohibits long-term appropriations, fixing a period "over which the law-makers hold complete control over the purse-strings of the State."Edmondson, 120 Ark. at 85. The provision's
 manifest intention [is] to give each succeeding legislature a comprehensive and exact view of the State's financial condition from the appropriations made and expended and to require it to make such appropriations for the next [year] in accordance with the Constitutional limitations as will meet the needs of the State Government and pay the expenses of its administration.
Dickinson, Auditor v. Clibourn,125 Ark. 101, 106, 187 S.W. 909 (1916).
The foregoing suggests a near-absolute power of the legislature generally to decline to appropriate funds. But the legislature, in considering whether to make a particular appropriation, should be aware of another provision of our constitution: "The General Assembly shall, from time to time, provide for the payment of all just and legal debts of the State." Ark. Const. art. 16, § 2.
In the normal course, a creditor of the state unable to obtain payment by other means might file a claim with the Arkansas State Claims Commission. By establishing the Commission, the legislature "created a method by which claims alleged to be `just and legal debts of the state' shall be filed, processed, and reviewed by the General Assembly while preserving the state's sovereign immunity as declared in the Constitution." Fireman's Ins. Co. v. ArkansasState Claims Comm'n, 301 Ark. 451, 457, 784 S.W.2d 771 (1990). But the Commission must refer awards greater than $10,000 "to the General Assembly for an appropriation." A.C.A. § 19-10-215(b) (Repl. 2007); see also Op. Att'y Gen. 2004-207 (stating that, under statute, payment of claim in excess of $10,000 must be pursuant to appropriation). I cannot definitively predict how the conflicting interests embodied in the rule requiring payment of just and legal debts, but giving the state sovereign immunity, might be resolved in a particular instance. But in any event, because, for the reasons stated above, I cannot opine about the legality of inter-agency loans in general or the ADE/ATRS loan in particular, I also cannot opine definitively about the applicability or enforcement of this constitutional provision in general or in this particular case. *Page 5 
You have not asked about, and therefore I do not address at length, practical consequences that could flow from the General Assembly's refusal to appropriate funds for repayment of the ADE/ATRS loan or for any other use or purpose. Please note that nothing in this opinion is intended to imply that the General Assembly's failure to appropriate funds for an obligation's repayment — at least to the extent the failure causes a default — would be without practical consequences, perhaps serious ones, for the state and other interested parties.
In particular in this regard, I note that your request implicitly equates ATRS with ADE, referring to each as an "agency." While that characterization may be adequate for some purposes, it does not recognize that amounts loaned by ATRS were (and any related ADE-issued debt obligations held by ATRS are) trust assets invested and "held for the sole purpose of paying [teacher retiree] benefits and making disbursements in accordance the provisions of [applicable law, that] shall be used for no other purpose whatsoever. . . ." A.C.A. § 24-7-403(a) (Repl. 2000); seealso A.C.A. § 24-7-402(a) (Supp. 2009) (all ATRS assets are single trust fund). Your characterization also fails to recognize that the trust assets held by ATRS, including the money here loaned to ADE, include significant amounts contributed by public school employees. See
A.C.A. § 27-7-406 (Supp. 2009). It becomes clear that the General Assembly's failure to appropriate funds for repayment, even if lawful, and a consequent default, could have serious practical implications for persons who unquestionably are not state agencies.
Question 3 — When appropriating funds addressed to the loanobligation, does it matter what type of funds are appropriated forthat purpose? As noted earlier, general improvement funds haverecently been used for that purpose. Is the use of generalimprovement funds appropriate?
The constitution provides that "no moneys arising from a tax levied for any purpose shall be used for any other purpose." Ark. Const. art. 16, § 11. It follows, and it is my opinion, that the General Assembly may not appropriate, for loan repayment, amounts arising from a tax levied for a purpose that does not fairly include loan repayment or, more generally, financing of a related project or asset.
A statute establishes the General Improvement Fund. A.C.A. § 19-5-1005 (Repl. 2007). The fund "shall consist of those special revenues specified in § 19-6-301(171) *Page 6 
and any other funds made available by the General Assembly from time to time" and "shall be used to provide financing of various projects authorized by the General Assembly. . . ." A.C.A. § 19-5-1005(b), (c). The "special revenues specified in § 19-6-301(171)" arise from the estate tax. See
A.C.A. § 19-6-301(171) (Supp. 2009). They are "deposited into the State Treasury as special revenues and credited to the General Improvement Fund." A.C.A. § 26-59-122(a) (Repl. 2008). The ADE computer system is clearly a "project authorized by the General Assembly." The loan itself might be characterized as such. I conclude that the estate tax is levied for purposes that include the financing of such a project. In my opinion, then, an appropriation from the General Improvement Fund of money arising from the estate tax will not violate the constitutional prohibition cited above. It is true that the statute provides that other amounts may be deposited into the General Improvement Fund, but I have no reason to believe that the legislature has deposited any tax money that may not constitutionally be used for General Improvement Fund purposes.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JMB/cyh
[1] It is not clear whether you are asking about the borrower's actions or the lender's. You use the words "issue a loan" to denote the action in question and seem implicitly to define the loaning of money as the relevant "issuance." But it is the evidence of a debt, not the money loaned, that is more commonly referred to as having been "issued." See, e.g., A.C.A. § 24-7-404 (Repl. 2000) (referring to the borrower as the "issuer" of an investment obligation). Thus your question may fairly be understood to be about the legitimacy of either a lender's extending ("issuing") a loan to a borrower, or a borrower's issuing a promissory note or other evidence of indebtedness to a lender. *Page 1